Alesia Joy **KEPLINGER**, Appellant,

v.

John M. **KEPLINGER**, Appellee.

No. 91–CA–0687–S.

Court of Appeals of Kentucky.

Sept. 4, 1992.

Stuart E. Warren, Owensboro, for appellant.

William L. Wilson, Jr., Owensboro, for appellee.

Before GARDNER, HAYES and JOHNSON, JJ.

JOHNSON, Judge.

Alesia Joy Keplinger (hereinafter "Joy") appeals from an order of the McLean Circuit Court. The trial court imposed a child support obligation of $120 per week (equal to $520 per month) on Joy's ex-husband John M. Keplinger (hereinafter "John"), and Joy now complains that the trial court erred in deviating from the child support guidelines set out in KRS 403.212. The one issue raised by the parties is whether the wandering and intermittent nature of John's work is a factor of an extraordinary nature which would make application of the guidelines inappropriate. Because we believe it necessary to remand the case, we also address the issue of Joy's potential income.

The relevant facts are not terribly complicated. John is employed as a boilermaker by a Chicago-based company which sends him to various sites around the country. As with many other employees, John only works when his employer finds customers who need its services. Joy has worked as a nurse assistant and substitute teacher. They were divorced in 1988 when they were 22 years old. Their marriage had lasted five years and produced three children. Joy has custody of all three children and they all reside with Joy. Although John made less than $5,000 in 1986, he made approximately $30,000 per year in 1989 and 1990. Joy, however, makes very little money. The record indicates that, at the time of the hearing below, she had never earned substantially more than minimum wage, but she was working toward her college degree so that she could become a schoolteacher. On these facts, the trial court held:

After hearing the evidence and viewing the exhibits, the court does find and ORDER as follows:

1. As is becoming quite routine, Joy seems to think that the so-called "chart", if not an eleventh commandment, is at least a magic wand, but this court still believes that setting child support correctly will never be a science, but shall always remain an art.

There are many things to consider here other than the most recent pay checks of the parties, for instance: Joy has been attending college off and on for some six or seven years and is still only about half through; she quit a job paying $4.05 an hour to pursue her college courses; the court does not believe that anyone, including John, has a legal obligation to subsidize Joy's education; therefore, the court assigns little importance that Joy is now making very little money.

Some things to consider on the other side are: Although John made $30,000.00 in 1990, he does not in fact have a permanent job; he searches for job to job as a

boiler maker and who can say what the future holds in that respect.[1]

None of the aforesaid could be considered if child support was a science, but since reasonable child support shall always remain an art, this court does consider them. By far the most important thing in child support is setting an amount that will be paid. If it is too high, nothing often is paid and they will not accept these court "papers" at the grocery store.

2. The court finds it to be sensible and reasonable that henceforth John pay Joy the sum of $40.00 per week per child in child support, and it is so ORDERED.

3. If John get (sic) laid off, he can come back to court for a reduction. If his economic fortunes improve, Joy is always welcome. [Footnote added.]

■ We agree with the trial court's assertion that setting an appropriate amount of child support is an art rather than a science. Nevertheless, it is an art as to which the Legislature has every right to make prescriptions and set limitations. Where unusual circumstances exist which are not specifically provided for in the statute, the Legislature has provided that trial courts should exercise their discretion to achieve just results. KRS 403.211(3)(g). But a trial court does *not* have the discretion to deviate from the guidelines simply because it thinks the Legislature erred in setting the appropriate levels. Nor does it have the discretion to ignore the guidelines because it feels that important factors were ignored by the Legislature. We must assess the trial court's order with these principles in mind.

■ The trial court first noted that Joy had quit a job paying $4.05 an hour to pursue her college courses. While KRS 403.212(2)(d)[2] allows the trial court to consider a party's potential income under some circumstances, this Court has held that there must be a showing of bad faith. In *McKinney v. McKinney*, Ky.App., 813 S.W.2d 828, 829 (1991), the Court held that the statute only applies

when [a party] purposely terminate[s] [her] employment or changes to employment with lower pay *with an intent to interfere with [her] support obligations.* If an individual's employment situation changes because of circumstances beyond [her] control or is reasonable in light of all the circumstances, then it would be unfair to find [her] to be voluntarily underemployed. KRS 403.-212(2)(d) must therefore be interpreted to include a bad faith requirement. [Emphasis added.]

*See also Redmon v. Redmon*, Ky.App., 823 S.W.2d 463 (1992).[3] This is *not* a case where bad faith has been shown.[4] Thus, the trial court erred by refusing to consider Joy's lack of income, or in imputing to Joy $700 per month income even though she did not actually make that much. *See McKinney, supra; Redmon, supra.* The evidence, when viewed in the light most favorable to John, shows that Joy had an annual potential income as a substitute teacher of approximately $1,380 for 1991.[5]

---

1. This finding is contradicted by the record, wherein John testifies that he is an employee of a Chicago-based company. It is this company which searches for work and tells John where to go. Although John is laid off from time to time, it seems that he then collects unemployment compensation until he is called back to work.

2. KRS 403.212(2)(d) provides in part as follows:

If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income.... *Potential income shall be determined based upon employment potential and probable earnings level based on the obligor's recent work history, occupational qualifica-

tions, and prevailing job opportunities and earnings levels in the community.

3. In fairness to the trial court, we feel obligated to point out that *Redmon* and *McKinney* were published *after* it made its decision in this case.

4. In fact a custodial parent's need for further education might appropriately be considered as an extraordinary consideration which would justify imposing an even heavier burden on the noncustodial parent than what the guidelines require. *See* KRS 403.211(3)(c), (g).

5. The record indicates that Joy had been working approximately four days per month as a substitute schoolteacher for $34.50 per day.

In computing the couple's "Combined Adjusted Parental Gross Income" (hereinafter "CMI") under KRS 403.212, the trial court should have made a finding as to each party's income and set an appropriate child support amount. If the trial court had felt that there were extraordinary factors that justified a deviation from the chart set out at KRS 403.212(6), those factors should have been set out in the order. KRS 403.211(3). If the trial court felt that John's "income" was not equal to his highest yearly earnings, the court should have said so. *See* CR 52.01. The Legislature has determined, however, that the amount of child support set by the trial court would only be just and reasonable if John were making substantially less than what he actually made in 1989 and 1990. The court sought to justify its decision by referring to the uncertain nature of John's work. Although that factor might properly have been taken into account in setting a schedule for payments (*e.g.* by having John make payments at one level when working and at another level when laid off, as was done by the trial court in a previous order), under the facts of this case, it is not an "extraordinary factor" justifying departure from the guidelines.

John admitted that he earned approximately $30,000 per year in 1989 and 1990, and he admitted that he was earning at that level in 1991. He did not present any evidence to show that his future earnings were likely to vary significantly from the 1990 level.[6] We believe that KRS 403.-212(2)(a) must be read as creating a presumption that future income will be on a par with the worker's most recent experience.[7] The party who wants the trial court to use a different income level in applying the child support guidelines bears the burden of presenting evidence which would support the requested finding. *Cf. In re Marriage of Scafuri*, 203 Ill.App.3d 385, 149 Ill.Dec. 124, 561 N.E.2d 402 (1990)

(Child support guidelines establish beginning point for analysis and shift burden of presenting evidence to parent asking court to deviate from guidelines). In this case, there was no evidence indicating that John was likely to revert to his teenage earning capacity. Thus, the trial court erred in not setting child support at a level commensurate with Joy's and John's most recent earnings. Their CMI was approximately $2,600; the appropriate guideline amount was $770 per month; John's share of that obligation was $740 per month, or $170 per week.

Thus, we reverse and remand for application of the child support guidelines in a manner consistent with this Opinion.

GARDNER, J., concurs.

HAYES, J., concurs with result only.

6. Although he indicated that future layoffs were likely, he indicated that such layoffs had also occurred in 1990. Thus, we see nothing to indicate a likelihood of lower earnings in the future; but as the trial court noted, modifications can be had as events warrant.

7. KRS 403.212 sets out in some detail the various items which should be counted as income and how those items may be proved.