**Terry Ray McDONALD, Appellant**

v.

**Vickie Sue Marlin McDONALD, Appellee.**

No. 93–CA–0739–MR.

Court of Appeals of Kentucky.

Aug. 19, 1994.

Stephen C. Todd, Allen, Boeckmann & Todd, Bowling Green, for appellant.

Timothy J. Crocker, Crocker & Wilkey, Franklin, for appellee.

Before DYCHE, GARDNER and McDONALD, JJ.

*OPINION REVERSING AND REMANDING WITH DIRECTIONS*

McDONALD, Judge.

The parties to this appeal were married in 1982 and separated in 1989. In the property settlement agreement, which was incorporated in the decree of dissolution, Terry McDonald agreed to pay the sum of $125 per week for the support of the parties' two children. It was also agreed that he would pay maintenance to the appellee, Vickie McDonald, in the amount of $40 per week until May 11, 1990. The parties had little property to divide. Vickie got the trailer and its contents. The record does not reveal what property Terry was awarded.

This appeal concerns the indebtedness accumulated by the McDonalds, and specifically the approximate sum of $5,500 owed to Commercial Credit Corporation. Vickie agreed to be responsible for the debt on the trailer, the debt to ITT Financial Services, which was incurred for the underpinning on the trailer, and a debt to Wickes Lumber Company incurred in building a porch for the trailer. Terry agreed to pay the debt to Commercial Credit Corporation and sums owed to Goodyear and Graves Gilbert. Again the record does not reveal the amount of any of these debts except the sum due to Commercial Credit.

The decree was entered on March 22, 1991. The trial court found the terms and conditions of the property settlement agreement to be "fair and reasonable to both parties." On September 22, 1992, Vickie moved the court to require Terry to show cause why he should not be held in contempt for failure to comply with the decree of dissolution, specifically his failure to pay the indebtedness to Commercial Credit. She also asked for a judgment in the amount of $5,571.97, the amount owed, or in the alternative, an extension of the appellant's maintenance obligation.

A hearing was conducted before the trial court on December 14, 1992. According to the order appealed from, the parties were present and represented by counsel. The trial court made the following relevant findings:

The respondent has not paid the Commercial Credit Corporation debt. Instead, in April, 1992, the respondent filed a chapter 7 bankruptcy proceeding, and his indebtedness to Commercial Credit Corporation has been discharged by the Bankruptcy Court. Before he filed his bankruptcy case, the respondent informed the petitioner of his general intention to file for bankruptcy, but he did not inform her specifi-

cally when he filed his petition, nor did he list the petitioner as a creditor on his bankruptcy petition. Except for her knowledge that he had declared an intention to file bankruptcy, the petitioner never had actual knowledge that a bankruptcy proceeding had been filed.

Subsequent to the respondent's discharge in bankruptcy, the petitioner sought to obtain a home loan, and a credit check revealed that she is still listed by Commercial Credit Corporation as indebted to it on the parties' joint debt. *To date Commercial Credit Corporation has taken no action to enforce payment by the petitioner,* but the debt continues to hang over her head. (Emphasis added).

The trial court, relying on *Low v. Low,* Ky., 777 S.W.2d 936 (1989), modified the maintenance agreement and ordered that Terry pay Vickie $5,571.97, or the "then-present balance of the Commercial Credit Corporation debt." Vickie was ordered to use the award to satisfy the debt owed to Commercial Credit.

In his appeal Terry argues the trial court erred in its application of the *Low* case, *supra.* It asserts that the facts are "clearly distinguishable" from those in *Low* and that "[his] assumption of indebtedness ... should [not] be considered as an obligation directly related to either maintenance or support." Terry suggests that the only remedy for Vickie is to reopen and intervene in his bankruptcy proceeding for a determination in that forum as to the debt's dischargeability. *See In re Calhoun,* 715 F.2d 1103 (6th Cir.1983).

■ While we agree with Terry's contention that the trial court inappropriately utilized the authority in the *Low* case to modify lump-sum maintenance, Terry is obviously confused about Vickie's rights and remedies under their property settlement agreement. Specifically, since Terry did not name Vickie as a creditor in his bankruptcy proceeding and did not attempt to obtain a discharge of his contractual obligations under the hold-harmless clause of the property settlement agreement, his ability to discharge that obligation has never been at issue. Terry is under the misimpression that the fact the underlying debt to Commercial Credit was

discharged, his obligation under the property settlement agreement vis-a-vis the Commercial Credit debt was also discharged. However, as pointed out *In re Calhoun, supra,* at 1106, n. 4:

> There are two distinct obligations involved in an agreement to assume former joint marital debts—the underlying debt owed to the mutual creditor and the obligation owed directly to the former spouse to hold the spouse harmless on the underlying debt.

If Terry wanted to discharge both obligations, he needed to name both Commercial Credit *and* Vickie as creditors in his bankruptcy petition. The trial court found there was no notice to Vickie of the bankruptcy proceeding and we assume she was not listed as a creditor. Thus Terry's insistence that his assumption of the debt was not in the nature of support or maintenance is of no real consequence, as Terry has not sought to discharge his obligations under the hold-harmless clause in the first instance. *See* J. Singer, *Divorce Obligations and Bankruptcy Discharge: Rethinking the Support/Property Distinction,* 30 Haw.J. on Legis. 43 (1993), and S. Scheible, *Bankruptcy and the Modification of Support: Fresh Start, Head Start, or False Start?,* 69 N.C.L.Rev. 577 (1991).

■ We do, however, agree that the trial court erred in modifying Terry's maintenance obligation under the authority in *Low v. Low, supra.* First, it is of critical significance that in *Low* the debt discharged in bankruptcy court by Mr. Low was owed *directly* to Mrs. Low. Our Supreme Court allowed a modification of lump-sum maintenance in that instance as Mr. Low's failure to pay the debt owed under the property settlement "render[ed] full compliance with the decree impossible and defeat[ed] the scheme formulated by the court." *Id.,* 777 S.W.2d at 938. In the instant case, the appellant's discharge of the debt owed to Commercial Credit, a third party, has not affected the "scheme" of the parties' property settlement agreement. Vickie is receiving everything she bargained for and has not been asked, much less required, to pay the debt to Commercial Credit. The trial court specifically

found that Commercial Credit "has taken no action to enforce payment" of the debt. Until such time as Vickie is called upon to answer the debt, there is no harm to her, much less any "manifest inequity," *Id.*, 777 S.W.2d at 938, so as to invoke the extraordinary remedy fashioned in *Low*. While certainly there is nothing to stop Commercial Credit from proceeding against Vickie, until it does, the trial court has no authority under the hold-harmless clause to require Terry to indemnify Vickie.

Accordingly, the judgment of the Simpson Circuit Court is reversed and remanded with directions to dismiss Vickie's motion as having been made prematurely.

DYCHE, J., concurs in result.

GARDNER, J., dissents and files a separate opinion.

GARDNER, Judge, dissenting:

I respectfully dissent. Of significance in this case is the fact that the debt to Commercial Credit is ever increasing via interest. Because of the discharge in bankruptcy, Terry has no obligation nor any intent to pay this marital debt. While it is true that Vickie is not yet the subject of collection procedures, it is equally apparent that she is obligated to Commercial Credit and recognizes that obligation. When one considers this sizable debt and commensurate interest charges coupled with the probable costs of collection, the majority opinion has placed Vickie, a person with limited financial resources, in a legal limbo.

The circuit court has fashioned an equitable remedy in keeping with precedent. Here, as in *Low, supra*, the discharge in bankruptcy has created a manifest inequity. In this case there are no "beneficial aspects of finality of litigation" than to interfere with Vickie's peace of mind and frustrate her already precarious financial future. *Id.* at 937. I would affirm.