**Roy Shane HOWARD, Appellant,**

v.

**Sondra HOWARD, Appellee.**

**No. 2009–SC–000442–DG.**

Supreme Court of Kentucky.

April 21, 2011.

Douglas Glenn Benge, Jensen, Cessna, Benge & Webster, London, KY, Counsel for Appellant.

Mary–Ann Smyth, Tipton and Tipton, Corbin, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

## I. INTRODUCTION.

We accepted discretionary review of this case primarily to resolve whether a trial

court could properly enforce, through its contempt powers, an obligation under a divorce decree to make payments to a creditor on a marital debt even after the former husband, who had been ordered to make the payments, received a post-decree Chapter 7 bankruptcy discharge, and the former wife failed to institute an adversary proceeding in bankruptcy court. We conclude that the trial court could properly enforce the former husband's divorce obligation through contempt proceedings. Following recent amendments to the federal bankruptcy code, this obligation is excepted from discharge in bankruptcy with no requirement for an adversary proceeding in bankruptcy court.

This case also presents the issue of whether a motion for modification of child support was properly denied, especially in light of the fact that the amount of child support established in the divorce decree was based upon the parent's imputed income as a result of a finding of voluntary under-employment. We conclude that the trial court properly denied the motion for modification because the evidence presented on the motion for modification did not establish a material and continuing change in circumstances.

On a third issue, we find no error in the trial court's awarding attorney's fees to one party.

As a consequence of our analysis, we affirm the decision of the Court of Appeals affirming the rulings of the trial court on these three issues.

## II. FACTS.

The decree dissolving the marriage of Roy Shane Howard and Sondra Howard provided for joint custody of their minor child with Sondra serving as the primary residential custodian and Shane paying her child support. The amount of child support was not derived from Shane's actual earnings at the time of the divorce decree but, from his recent history of earnings as a federal prison guard. The decree stated that Shane "is voluntarily under employed since he voluntarily quit his job and gave no testimony which would justify him quitting his employment."

Shane claimed in pre-decree papers that he and Sondra agreed that he should quit his job at the federal prison because Sondra also worked there as a guard, and their marital split created an awkward working environment. Sondra denied making such an agreement and alleged that Shane's continued employment at the federal prison would not pose a problem because they worked different shifts. Shane also claimed in his papers that he unsuccessfully tried to regain employment as a federal prison guard.

In addition to ordering Shane to pay child support, the trial court divided the parties' marital property and determined which marital debts each party was to pay. Relevant to the issues raised before us, the decree stated that the trial court found, as a matter of fact, that "[t]he parties have agreed" that Shane would be liable for certain debts incurred by the parties, including a National City loan on the parties' Dodge Durango, which was repossessed by the time of the decree.

Some fifteen months after entry of the decree, Shane filed a motion in the trial court to reduce his child support obligation because of an alleged material change in circumstances. With his motion, Shane filed a supporting affidavit in which he claimed health problems, inability to find correctional work or similarly lucrative positions, and filing for bankruptcy. He requested that his child support obligation be reduced retroactive to the date he filed his motion.

The trial court conducted a hearing on this motion and also heard motions brought by Sondra. Sondra sought payment of her attorney's fees and sought to have Shane held in contempt for failure to pay the debt on the repossessed Durango, for which she had been subjected to collection efforts by the creditor. Both parties testified about their current income levels, insurance, and childcare expenses. Shane testified to filing bankruptcy shortly after entry of the decree, to receiving a discharge in bankruptcy, and to not having a deficiency judgment entered against him following the repossession of the Dodge Durango.

The parties acknowledged at the hearing that Sondra received notice of Shane's filing for bankruptcy and that she did nothing to challenge the discharge of his debts. They also acknowledged that Shane received a Chapter 7 discharge and that the creditor then sought collection from Sondra, rather than Shane, on the repossessed Durango.[1] But Shane admitted that he was responsible for paying the debt on the Durango under the divorce decree and even seemed willing to admit that this was a nondischargeable marital debt before his attorney lodged an objection to characterizing this debt as nondischargeable.

The trial court found Shane to be in contempt for failure to pay the debt on the repossessed Durango. The trial court also denied Shane's motion to modify child support, stating that no new facts had been adduced on this issue following entry of the decree in which he was found to be voluntarily underemployed. The trial court further ordered Shane to pay $500 of

Sondra's attorney's fees. Sondra requested that he pay $1,500 in attorney's fees; but the trial court stated it would limit the award to $500 because it had only found Shane in contempt on one issue.

Shane appealed all of these rulings to the Court of Appeals, which affirmed on all issues. And we affirm, addressing each issue in turn.

## III. ANALYSIS.

### A. No Error in Denial of Motion to Modify Child Support.

The Court of Appeals properly affirmed the trial court's denial of Shane's motion to modify child support because we discern no abuse of discretion in the trial court's ruling.[2]

### 1. Standard for Modification Not Met.

Kentucky Revised Statutes (KRS) 403.213(1) states that child support may be modified "only upon a showing of a material change in circumstances that is substantial and continuing." Shane averred in his affidavit that a material change in circumstances occurred since the establishment of his child support obligation in the divorce decree. He stated in his affidavit that he suffered health problems, including severe back pain for which he underwent surgery; and he had been under a doctor's treatment "for several medical conditions for over two years now," and these health conditions made him ineligible for employment as a correctional officer. He also stated that he unsuccessfully applied for correctional work, both with the Federal

1. There seems to be no dispute that Shane filed for Chapter 7 bankruptcy, that Sondra received notice of his filing for bankruptcy, and that Shane received a discharge in bankruptcy. But the parties have not shown us, nor have we located upon our own review of the record, any written documentation concerning the bankruptcy proceeding.

2. *See Artrip v. Noe,* 311 S.W.3d 229, 232 (Ky. 2010) (rulings on motions to modify child support subject to abuse of discretion standard of review).

Medical Center in Lexington and with the Lexington–Fayette Urban County Government. As a result of his health problems and inability to work as a correctional officer, Shane asserted that he had to file bankruptcy, which caused further difficulty in his quest for correctional work. He stated he was then employed full-time, earning an hourly wage that was about half as much as he earned as a federal correctional officer. He also stated he lived with his parents and was unable to meet both the child support obligation established by the decree and his own needs.

While the affidavit at least arguably identifies issues that support Shane's claimed difficulty in satisfying his child support obligation, the affidavit does not definitively establish that these events— other than filing for bankruptcy—occurred since the decree or resulted in material changes in his circumstances since entry of the decree. For example, Shane failed to provide any dates to establish when medical procedures occurred or medical diagnoses were made. In fact, his testimony at the hearing on his modification motion was that he had back surgery—possibly the back surgery to which he alludes in his affidavit—while he was separated but before entry of the decree. Also, his affidavit states that he had been undergoing medical treatment for over two years, suggesting that some of this treatment commenced before the decree. Shane's proof did not specifically indicate that any medical treatments, diagnoses, or medical problems occurred since entry of the decree. He also does not indicate when he applied for correctional officer positions. In fact, the record indicates that Shane unsuccessfully applied for such positions before entry of the decree.

Shane also failed to present strong evidence of a change in circumstances since the decree at the hearing on his motion.

In fact, when asked on cross-examination whether he raised the same issues to the trial court before the decree, he admitted that he had. And he offered no medical evidence regarding specific treatments, diagnoses, or limitations placed on his activities since the decree.

On cross-examination, opposing counsel elicited from Shane testimony that he filed bankruptcy about a year after entry of the decree. But Sondra testified that Shane made his child support payments after the bankruptcy discharge despite falling behind on his obligation before the discharge, suggesting that despite—and maybe even because of—the bankruptcy relief, Shane could make the payments. And he testified to having back surgery before the divorce decree when questioned about an issue concerning whether he might have used Sondra's health insurance after the divorce.

In short, Shane made an insufficient demonstration of change of circumstances post-decree with the exception of his filing for bankruptcy and obtaining a bankruptcy discharge sometime before the evidentiary hearing on the motion for modification. Because other financial obligations were discharged, more of Shane's income could presumably be applied to child support. And Sondra testified that Shane's child support payments had become more regular since the bankruptcy discharge.

The dissent points out that Shane worked full-time since the decree and switched jobs, resulting in higher earnings, which we note were still about half his earnings as a prison guard. We fail to see how this evidence of full-time work and higher earnings compelled the trial court to find a "material and continuing change of circumstances" post-decree. Shane was working full-time at the time of the decree at a similar noncorrectional job. And, contrary to the dissent, we saw no indication

that the trial court refused to consider the evidence Shane presented. The trial court simply found that the evidence Shane presented did not establish a material and continuing change of circumstances post-decree.

Based upon our review of the evidence presented to the trial court, we conclude that the trial court did not abuse its discretion in denying Shane's motion for modification. Shane's evidence simply fell short of showing a material change of circumstances in the fifteen-month span between the decree establishing his original child support obligation and his motion to modify child support. The Court of Appeals correctly affirmed this ruling.[3]

Contrary to the fears expressed in the dissent, we do not hold that "once a person is found to be 'voluntarily underemployed,' he or she will remain [to be considered] so, unless and until, he or she returns to the income level previously enjoyed." In some cases, one may never return to the earlier income level and still establish a "material and continuing change of circumstances" sufficient to demonstrate that one is no longer voluntarily underemployed and entitled to a reduction in the child support obligation. But the party requesting the change must prove a material and continuing change of circumstances by presenting evidence of what has occurred since the initial obligation was established. Shane is not foreclosed from filing motions for modification in the future. And he may prevail if the evidence he presents in the future actually shows such a material and continuing change of post-decree circumstances.

We do not suggest in our holding that trial courts may never take into account whether personal or family concerns may legitimately spur changes to less lucrative employment in determining whether income should be, or should continue to be, imputed to a parent. But a trial court must also recognize that the child's reasonable needs do not necessarily change when a parent switches to less lucrative employment and the parent's financial responsibility is not abrogated simply because the parent voluntarily switches to, or stays with, less lucrative employment.[4]

And it is not our responsibility as an appellate court to weigh the evidence. Although Sondra now earns approximately twice as much money as Shane, and perhaps a large portion of Shane's income is devoted to child support, the dissent fails to note how the child's reasonable needs have become less; and the dissent does not mention the fact that Sondra has at least one other prior-born child to support and has continued to work as a prison

3. At the modification hearing, Shane's counsel alluded to a statement by the trial court that the trial court did not want to relitigate certain issues, apparently relating to the trial court's previous ruling on voluntary underemployment. Although we are unable to ascertain exactly what the judge said (and the parties have not directed our attention to where in the record such pretrial conference may specifically be found), we assume that the trial court simply meant to confine the evidence at the modification hearing to changes post-decree and not to relitigate the finding of voluntary underemployment at the time of the decree. We find no indication in the record before us that Shane was prevented from presenting evidence relating to his allegations of changes post-decree.

4. See Rohloff v. Rohloff, 161 Mich.App. 766, 411 N.W.2d 484, 488 (1987) (affirming child support obligation imposed based on imputed income despite apparent lack of bad faith where mother quit work upon remarriage for the purpose of strengthening new marriage (and caring for stepchildren) because "we do not believe that plaintiff is entirely free to make financial decisions which are allegedly in the best interest of her new family, but which abrogate her responsibilities to the preexisting family.").

guard. As for the concern that Shane's decision to leave his prison guard job was motivated by a desire to avoid stressful confrontations with Sondra at work, we must grant proper deference to the trial judge who heard the evidence first-hand.

While the deadline to appeal any issue in the divorce decree itself has long since expired[5] and the only issue properly before the courts now is whether Shane made the requisite showing of a change of circumstances since the decree, we address some issues he raises concerning voluntary under-employment findings for the benefit of these parties, as well as for the bench and bar in general.

### 2. Finding of Bad Faith Not Required for Initial Finding of Voluntary Underemployment or Denial of Modification Due to Continued Voluntary Underemployment.

■ In particular, Shane argues that the trial court could not find him (or continue to find him) underemployed in the absence of a finding of bad faith, citing the 1991 Kentucky Court of Appeals case of *McKinney v. McKinney.*[6] However, as pointed out by unpublished cases in the Court of Appeals since *McKinney*, KRS 403.212(2)(d) (governing findings of voluntary under-employment) has since been amended in such a way that there is clearly no requirement for a finding of bad faith

to find a parent voluntarily underemployed.[7] In fact, KRS 403.212(2)(d) specifically states that "[a] court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation." So a finding of bad faith is no longer required—contrary to the holding of *McKinney*—and the validity of the trial court's denial of modification of his child support obligation is not undermined by a lack of finding of bad faith. The dissent may disagree with the legislative decision not to require a finding of intent to avoid child support as a prerequisite for a finding of underemployment, but we would be acting outside our proper role to question the wisdom of this legislative act and require such a finding contrary to the statute.[8] And we do not believe that KRS 403.211(2)'s recognition of the trial court's authority to deviate from the child support guidelines where application of the guidelines would be unjust or inappropriate overrides KRS 503.212(2)(d)'s clear directive that a finding of voluntary underemployment does not require a finding of intent to avoid or reduce child support.

Further contrary to Shane's arguments, the trial court was not necessarily required to consider anew whether he was currently voluntarily underemployed. The question before the trial court was whether there

---

5. *See* Kentucky Rules of Civil Procedure (CR) 73.02(1)(a) ("The notice of appeal shall be filed within 30 days after the date of notation of service of the judgment or order under Rule 77.04(2)."). The divorce decree was entered in August 2006. Apparently, there was no direct appeal of any issues in this judgment. The motion for modification of child support was filed in 2007.

6. 813 S.W.2d 828 (Ky.App.1991).

7. *See Com. ex rel. v. Mayes,* No. 2002–CA–002140–MR, 2004 WL 1635617 at *2 (Ky.

App. July 23, 2004); *Purtilar v. Newton,* No. 2009–CA–001081–ME, 2010 WL 476283 at *2 (Ky.App. Feb. 12, 2010).

8. *See, e.g., Mondie v. Commonwealth,* 158 S.W.3d 203, 209 (Ky.2005) ("It is the province of this Court under the constitution to decide what the law is and not to declare what it should be. If the statute 'is unwise or impolitic, the remedy rests with the Legislature; not with the courts.'") (footnotes omitted).

had been a material, substantial, and continuing change of circumstances justifying a modification of Shane's child support obligation, including any change in circumstances since the decree that would indicate that he was no longer voluntarily underemployed. In our view, the lower courts correctly determined that the evidence presented did not demonstrate such a material, substantial, and continuing change of circumstances.[9]

### 3. Actual Earnings Alone Not Determinative of Motion for Modification of Child Support Obligation Based on Imputed Income Due to Finding of Voluntary Underemployment.

■ Shane also argues that Sondra "should have had the burden to show why the court should continue to impute such a high income rather than using [Shane's] actual income history for the two years since he was employed by the federal prison[,]" citing *Keplinger v. Keplinger*.[10]

The Court of Appeals, in *Keplinger*, stated that generally one's potential future income should be presumed to "be on a par with the worker's most recent experience."[11] But we note that *Keplinger* concerned the appropriateness of an initial child support obligation in a divorce decree, rather than a motion for modification of an existing child support obligation. So we cannot agree with Shane that the trial court should have modified his child support obligation based solely on his actual earnings since the divorce.[12] More accurately stated, we believe the relevant question was whether there had been a material change in circumstances to justify discontinuing the imputation of his former income.

The fact that his actual earnings since the divorce had been lower than his pre-decree earnings as a prison guard, standing alone, did not entitle Shane to modification. To prevail, Shane needed to show

**9.** See *Goldsmith v. Bennett–Goldsmith*, 227 S.W.3d 459, 462 (Ky.App.2007) (affirming denial of motion for modification of child support where movant "did not put forth the *necessary evidence* required to establish that there had been a *material change in circumstances* requiring a modification of his child support obligation.") (emphasis added).

Shane contends that *Goldsmith* did not involve "the legal theory of voluntarily underemployed status" and suggests that it is, thus, inapplicable to the resolution of his case. Although *Goldsmith* did not apparently involve an initial finding of voluntary underemployment in the divorce decree, unlike the present case, we find no reason why its holding—that a motion for modification of child support may properly be denied in the absence of *evidence* showing a change in circumstances since the decree—would not apply to the resolution of the motion for modification here. (The motion for modification in *Goldsmith* was premised on an alleged reduction in the obligor's income from rental properties and the obligor's alleged mental illness. Because the obligor did not provide any proof that he no longer owned the rental properties that previously provided income and further did not provide proof that his alleged mental illness had affected his income from rental properties, the trial court and Court of Appeals determined that he was not entitled to modification of his child support obligation. *See id.*)

**10.** 839 S.W.2d 566 (Ky.App.1992).

**11.** *Id.* at 569.

**12.** For example, if a child support obligor was properly determined to be voluntarily underemployed at the time of the decree and the obligor's child support obligation was, thus, properly based on imputed income based on prior higher earnings, the fact that the obligor's earnings remained the same at some later point when the obligor sought modification would not call for a reduction in the obligation where the obligor remained voluntarily underemployed by choice (*i.e.*, there were no changes in circumstance that might prevent the obligor from obtaining the former, more lucrative type of employment).

that a material, substantial, and continuing change of circumstances existing post-decree made him less capable of attaining his former income level than existed at the time of the decree. The trial court did not find that Shane made the requisite showing. And we discern no abuse of discretion. So we affirm the Court of Appeals on this issue.

### B. No Reversible Error in Contempt Finding.

Shane argues that the trial court erred in holding him in contempt for failing to comply with a divorce decree provision requiring him to make payments on the loan for the Dodge Durango vehicle because of his bankruptcy discharge. Apparently, Shane and Sondra jointly obtained the loan on the Dodge Durango before the decree, the vehicle was repossessed before the decree, and the decree stated that Shane would be responsible for payments on the Durango loan in accordance with the parties' agreement. But Shane did not explicitly agree to hold Sondra harmless[13] for the debt on the repossessed Durango.

After the decree, Shane failed to make these payments and filed for bankruptcy under Chapter 7. Sondra received notice of his bankruptcy filing, but she did not file an adversary proceeding challenging Shane's discharge of the Durango debt. After Shane received a bankruptcy discharge, the creditor pursued collection from Sondra, who testified to experiencing credit problems as a result. She filed a motion with the trial court to hold Shane in contempt for failing to make payments on the Durango loan. The trial court held Shane in contempt, although it did not impose a sanction for Shane's contempt of court.

The Court of Appeals affirmed the contempt finding, concluding that Shane's obligation was not discharged under 11 United States Code (U.S.C.) § 523(a)(15). The Court of Appeals noted that this statute had been amended, effective in 2005, to provide that a discharge under Chapter 7(11 U.S.C. § 727) does not discharge the debtor from any debt "to a spouse, former spouse or child" for something other than a "domestic support obligation" (*i.e.*, child support or maintenance)[14] that "is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit."

As the Court of Appeals states, obviously Shane had an obligation to pay the Durango debt under the divorce decree. But the tricky question is whether this was a debt to his former spouse that would not be subject to discharge under the post-BAPCPA[15] version of 11 U.S.C. § 523(a)(15). Obviously, Shane was not required to make a direct payment to Sondra under the relevant divorce decree provision, which simply stated that he was

13. BLACK'S LAW DICTIONARY (8th ed.2004) defines the phrase *hold harmless* as "[t]o absolve (another party) from any responsibility for damage or other liability arising from the transaction; INDEMNIFY."

14. 11 U.S.C. § 523(a)(15) provides for an exception to discharge of a debt "not of the kind described in paragraph (5)" meeting the other elements of 11 U.S.C. § 523(a)(15). 11

U.S.C. § 523(a)(5) refers to a "domestic support obligation" as another exception to discharge. A "domestic support obligation" generally refers to child support or maintenance. 11 U.S.C. § 101(14A)(B).

15. "BAPCPA" refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

responsible for making payments to the creditor.

### 1. State Courts Have Jurisdiction to Construe Discharge and Determine if Particular Debt is Within Discharge.

Before we address the merits on this issue, we must first address whether Kentucky state courts have jurisdiction to determine the dischargeability of a debt. As we recently stated, "[w]hile ... state courts lack jurisdiction to modify or to grant relief from a bankruptcy court's discharge injunction, they retain, with a few exceptions not pertinent here, concurrent jurisdiction under 28 U.S.C. § 1334(b) to construe the discharge and determine whether a particular debt is or is not within the discharge."[16] We also note recent federal authority that: "Aside from determinations of dischargeability under 11 U.S.C. § 523(a)(2), (4), or (6) [not implicated in present case], state courts have concurrent jurisdiction to determine the dischargeability of a debt."[17] So Kentucky state courts have jurisdiction to determine whether Shane's obligation to make payments on the bank loan on the repossessed Durango was discharged in his Chapter 7 bankruptcy.

### 2. Under Prior Law, Necessity for Adversary Proceeding to Determine Exception from Discharge for Non–Support Divorce Debt under 11 U.S.C. § 523(a)(15).

Shane contends that he was discharged of any obligation to pay the Durango deficiency debt because he received a Chapter 7 bankruptcy discharge, citing the 2004 Kentucky Court of Appeals case of *Holbrook v. Holbrook*.[18] In *Holbrook*, the Court of Appeals held that an ex-spouse who received notice[19] of the debtor's bankruptcy filing was unable to recover arrearages on the debtor's obligation under the divorce decree to distribute a portion of pension benefits to her because she failed to file a complaint in bankruptcy court to determine that the pension arrearage debt,

16. *Sunbeam Corp. v. Dortch*, 313 S.W.3d 114, 115–16 (Ky.2010) (internal quotation marks omitted), *citing In re Pavelich*, 229 B.R. 777, 783 (B.A.P. 9th Cir.1999).

> *Dortch* also cited a number of other cases to the same or similar effect:
> See also, *In re Stabler*, 418 B.R. 764, 770 (B.A.P. 8th Cir.2009) (with a few exceptions, "state courts have concurrent jurisdiction to determine the dischargeability of a debt," as well as "whether [certain debts] constituted post-petition debts outside the penumbra of the discharge and discharge injunction."); *In re Hamilton*, 540 F.3d 367, 373 (6th Cir.2008) ("[s]tate courts have unbridled authority to determine the dischargeability of debts" but an incorrect interpretation that effectively modifies the discharge order is ineffective.); *In re McGhan*, 288 F.3d 1172 (9th Cir.2002) (approving of *Pavelich, supra*); *In re Lenke*, 249 B.R. 1 (Bankr.D.Ariz.2000) (" '[T]he bankruptcy court's jurisdiction [to determine that a debt has been discharged] is

concurrent with that of the appropriate local court.' ") (brackets in original; quoting from 1A *Collier On Bankruptcy* § 17.28A at 1739 (14th ed.1978)); *In re Honeycutt*, 228 B.R. 428, 430 (Bankr.E.D.Ark.1998) (With a few exceptions, "state courts have concurrent jurisdiction with the bankruptcy court to determine the dischargeability of debts.").
> *Id.* at 116.

17. *In re Stabler*, 418 B.R. at 770.

18. 151 S.W.3d 825 (Ky.App.2004).

19. Where an ex-spouse did not receive proper notice of bankruptcy filing, existing case law from the Court of Appeals suggests that an obligation to hold ex-spouse harmless on debt to third party under property settlement agreement was not discharged despite apparent lack of intervention in bankruptcy proceeding by ex-spouse. *See McDonald v. McDonald*, 882 S.W.2d 134, 135–36 (Ky.App. 1994).

which was not claimed to be child support or maintenance, should be excepted from discharge under 11 U.S.C. § 523(a)(15).[20] But, as Sondra noted, federal bankruptcy statutes have been significantly amended since *Holbrook* by the BAPCPA in such a way that *Holbrook*'s holding requiring the filing of a complaint in bankruptcy court to obtain a determination of exception to discharge under 11 U.S.C. § 523(a)(15) does not apply to cases where filing for Chapter 7 bankruptcy occurred following the effective date of the BAPCPA amendments (mid-October 2005).

Before the enactment of BAPCPA in 2005, 11 U.S.C. § 523(a) provided that a Chapter 7 discharge did not discharge a debtor from: "any debt ... (5) to a spouse, former spouse, or child of the debtor" for child support or maintenance under a separation agreement or divorce decree. Also excepted from discharge under Chapter 7 was "any debt ... (15) not of a kind described in paragraph 5 [*i.e.*, not for child support or maintenance] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record" unless the debtor was not reasonably able to pay the debt and the benefits of discharge to the debtor outweighed the detriment to the spouse, ex-spouse, or child.[21] Although debts for child support or maintenance

were simply not discharged in Chapter 7, at that time, 11 U.S.C. § 523(c)(1) stated that the debtor "shall be discharged" from other divorce-related debts under 11 U.S.C. § 523(a)(15) "unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge" under 11 U.S.C. § 523(a)(15).[22]

In other words, under pre-BAPCPA bankruptcy laws, an ex-spouse was required to take action in a former spouse's Chapter 7 bankruptcy case, or a non-support divorce debt would be discharged if the debtor received a Chapter 7 discharge. So as to pre-BAPCPA cases, *Holbrook* dictates that an ex-spouse, who receives notice of the debtor's Chapter 7 bankruptcy filing but who fails to file an adversary complaint in the bankruptcy court to obtain a determination that a non-support divorce debt is excepted from discharge, cannot obtain enforcement of that debt in state court once the bankruptcy court has granted a Chapter 7 discharge to the debtor.[23]

### 3. Post–BAPCPA, Debt Incurred in Divorce Excepted From Discharge Without Necessity for Adversary Proceeding in Bankruptcy Court.

Following the BAPCPA amendments,[24] 11 U.S.C. § 523(a)(5) recognized an excep-

---

**20.** 151 S.W.3d at 828.

**21.** 11 U.S.C. § 523(a)(15) (2004).

**22.** 11 U.S.C. § 523(c)(1) (2004).

**23.** *Holbrook*, 151 S.W.3d at 828. ("The Bankruptcy Code further provides that a non-support marital debt, like the pension arrearage at issue, shall be discharged unless the creditor files a complaint 'no later than 60 days after the date set for the meeting of creditors.' FRBP [Federal Rules of Bankruptcy Procedure] 4007; 11 U.S.C. § 523(c)(1). As stated earlier, Gwendolyn did not file such a complaint. Thus, although she

may have arguably been successful in preventing the discharge of the debt if she had responded in that forum, neither the Boyd Circuit Court nor this Court has the jurisdiction to reverse the order of the bankruptcy court discharging Vester's debt.") (footnote omitted).

**24.** Further amendments to the Bankruptcy Code, particularly 11 U.S.C. § 523, were made effective April 1, 2010, and December 22, 2010. But in discussing the bankruptcy code provisions applicable to the instant case, we will refer to the version of these laws in effect at the time of Shane's filing for Chapter

tion to discharge for debts "for a domestic support obligation" without explicitly requiring that such debts be to a spouse, former spouse, or child.[25] On the other hand, 11 U.S.C. § 523(a)(15) was amended to add language requiring that other divorce-related debts be "to a spouse, former spouse or child of the debtor" to be excepted from discharge.[26] 11 U.S.C. § 523(a)(15) was also amended to delete the former language that allowed for discharge if the debtor was not reasonably able to pay the debt and the benefits to the debtor outweighed the detriment to the other person(s) affected.

■ Not only was 11 U.S.C. § 523(a)(15) amended to require that the debt be to a present or former spouse or a child and to no longer permit discharge upon consideration of the debtor's ability to pay and balancing of the benefits and burdens on both sides, but 11 U.S.C. § 523(c)(1) was also significantly amended. Contrary to the pre-BAPCPA requirement that divorce debts other than those for child support or maintenance would be discharged unless the present or former spouse or child filed a complaint for an exception to discharge under 11 U.S.C. § 523(a)(15), the post-BAPCPA version of 11 U.S.C. § 523(c)(1) no longer includes debts under subsection (a)(15) among its list of debts that will be discharged unless the creditor takes action to obtain a determination that the debt is excepted from discharge.[27] So a non-support divorce debt (one that is not for child support or maintenance) *to a present or former spouse or a child* is excepted from discharge, and there is no requirement that the present or former spouse or child take part in the bankruptcy action for the debt to be excepted from discharge.[28]

### 4. The Obligation to Pay Debt on Repossessed Durango Under the Divorce Decree is a Nondischarged Debt to Sondra Even Without Hold Harmless Clause.

But the question here is whether Shane's obligation under the divorce de-

7 bankruptcy (2007) and at the time of the trial court's hearing on the parties' motions (2008).

25. 11 U.S.C. § 523(a)(5) (2007) states that a Chapter 7 discharge does not discharge the debtor for a debt "for a domestic support obligation." 11 U.S.C. § 101(14A)(B) (2007) defines a *domestic support obligation* as one "in the nature of alimony, maintenance or support...."

26. 11 U.S.C. § 523(a)(15) (2007) (stating that a Chapter 7 discharge does not discharge the debtor for a debt "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph 5 that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other of a court of record, or a determination made in accordance with State or territorial law by a governmental unit....").

27. 11 U.S.C. § 523(c)(1) (2007) only requires that exceptions to discharge for debts defined in subsections (2), (4), and (6) of 11 U.S.C. § 523(a) must be determined by the bankruptcy court or such debts will be discharged. 11 U.S.C. § 523(c)(1) (2004), by contrast, also required that debts defined in 11 U.S.C. § 523(a)(15) had to be determined excepted from discharge by the bankruptcy court on the creditor's request or would be discharged in Chapter 7.

28. *See also* 16 Louise E. Graham & James E. Keller, Kentucky Practice-Domestic Relations Law § 18:5 (3d. ed. 2008) ("Any indebtedness to a spouse, former spouse or child of the debtor that is not a domestic support obligation but was incurred 'in the course of a divorce [or] separation or in connection with a separation agreement, divorce decree or other order' is nondischargeable in a Chapter Seven proceeding.... Except in Chapter 13, a nondebtor spouse need not file an adversary proceeding to determine dischargeability.") (footnotes omitted).

cree to pay the bank loan on the repossessed Durango is a debt to his former spouse, Sondra. If the obligation to make payments on the bank loan on the repossessed Durango meets the requirements of 11 U.S.C. § 523(a)(15) as a debt to Sondra under the divorce decree, then Sondra is correct that she was not required to file anything in bankruptcy court in order later to obtain enforcement of Shane's obligation to her under the divorce decree in state court.[29] We conclude that the obligation does meet the requirements of 11 U.S.C. § 523(a)(15) and that Sondra was not required to file anything in bankruptcy court regarding Shane's Chapter 7 filing in order to preserve her right to enforcement in state court of Shane's obligation to her under the divorce decree.

Shane argues that because he was ordered to make payments to the bank, rather than directly to Sondra, that he did not owe any debt to her. Meanwhile, Sondra contends that the divorce decree established an obligation to her for him to make payments to the bank so it really is a debt to her.

Actually, in the divorce decree provision incorporating the parties' agreement that Shane would make the payments on the bank loan on the repossessed Durango, "two distinct obligations" are at issue.[30] Naturally, there is an underlying marital debt on the bank loan on the repossessed Durango. But the divorce decree also establishes a separate obligation to Sondra that Shane make payments on this loan as part of the division of marital property and debts even though there is no hold harmless provision.

▋ While the creditor presumably accepted Shane's obligation to it under the car loan had been discharged in bankruptcy,[31] Shane's obligation to Sondra under the divorce decree to make the payments to the creditor was excepted from discharge under 11 U.S.C. § 523(a)(15) because this constitutes a debt to a former spouse under a divorce decree. *Debt* is defined in 11 U.S.C. § 101(12) (2007) as "liability on a claim."[32] And a *claim* is basically defined as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment" under 11 U.S.C. § 101(5) (2007).[33] So, despite the

29. *See Fast v. Fast*, 766 N.W.2d 47, 49 (Minn. Ct.App.2009), *citing, e.g., In re Dumontier*, 389 B.R. 890, 896 (Bankr.D.Mont.2008); *In re Douglas*, 369 B.R. 462, 464 (Bankr.E.D.Ark. 2007); *In re Schweitzer*, 370 B.R. 145, 150–51 (Bankr.S.D.Ohio 2007) ("Spouses are no longer required to participate in the bankruptcy proceedings to preserve their rights to enforce such marital obligations. Federal courts have consistently interpreted the 2005 amendments as written.").

30. *See McDonald*, 882 S.W.2d at 136. ("There are two distinct obligations involved in an agreement to assume former joint marital debts—the underlying debt owed to the mutual creditor and the obligation owed directly to the former spouse to hold the spouse harmless on the underlying debt.").

31. We presume that the lender regarded Shane's obligation to it under the car loan as discharged in bankruptcy since it directed its collection efforts solely to Sondra. The divorce decree provision incorporating the parties' agreement that Shane would make the payments on the bank loan on the repossessed Durango was only binding on Shane and Sondra and would have no effect on the bank's right to seek payment from either Shane or Sondra. *See generally* James L. Musselman, *Once Upon a Time in Bankruptcy Court: Sorting Out Liability of Marital Property for Marital Debt is No Fairy Tale*, 41 Fam.L.Q. 249, 259 (Summer 2007).

32. The pre-BAPCPA definition of *debt* was the same: "liability on a claim...." 11 U.S.C. § 101(12) (2004).

33. 11 U.S.C. § 101(5) defines *claim* as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliqui-

language specifying a debt to a present or former spouse, the broad definition of debt has been interpreted to encompass divorce decree-imposed obligations to a former spouse to make payments on a loan from a third party.[34] So the trial court could properly enforce Shane's obligation *to Sondra* under the divorce decree even if Shane's obligation *to the bank* on the repossessed Durango had been discharged.[35]

■ While the debtor's obligation on an underlying debt to a third-party creditor may be discharged because that underlying debt was not *to a spouse or former spouse or child,* the weight of authority holds that a separate, otherwise enforceable, obligation to one's present or former spouse under a separation agreement or a

divorce decree to make payments on third-party debt is not dischargeable in Chapter 7 bankruptcy following the BAPCPA amendments.[36] Our holding today is premised on the broad definition of debt encompassed within the bankruptcy statutes. This holding is especially clear in cases where the debtor-spouse has not only been ordered to, or agreed to, pay the debt, but has also been ordered to, or agreed to, hold the other spouse harmless or indemnify the other spouse.[37]

When one spouse's obligation to make payments on third-party debt under a separation agreement or divorce decree is not accompanied by a hold harmless or indemnification clause, the law is perhaps somewhat less settled.[38] But some courts have

---

dated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured" OR a "right to an equitable remedy for breach of performance if such breach gives rise to right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."

The pre-BAPCPA definition of *claim* is essentially the same. *See* 11 U.S.C. § 101(5) (2004).

**34.** *See Cheatham v. Cheatham (In re Cheatham)*, Bankruptcy No. 08–63664, Adversary No. 09–6034, 2009 WL 2827951 at *5 (Bankr. N.D.Ohio Sept. 2, 2009) ("the mere fact that Defendant's debt is *payable* to First National Bank of Orrville still does not mean that the debt is not 'to' Plaintiff within the meaning of the Bankruptcy Code. Under the Code, the term 'debt' means liability on a 'claim.' 11 U.S.C. § 101(12). A 'claim' in turn, can mean either a right to payment or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. 11 U.S.C. § 101(5)."). *See also Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 837–38 (B.A.P. 10th Cir.2010) ("What matters in a § 523(a)(15) case is (1) the nature of the debt[ ] and (2) whether the debt was incurred *in the course of a divorce or separation.* The fact that the underlying obligation was payable to [third-party bank] does not mean that [debtor] did not incur a sepa-

rate obligation to [spouse] that is, in itself, a nondischargeable debt.") (footnotes omitted).

**35.** Because the bank is not a party to this appeal, we need not reach the question of whether any obligation Shane owed to the bank was discharged in bankruptcy.

**36.** *See In re Williams*, 398 B.R. 464, 469 (Bankr.N.D.Ohio 2008) ("Nowhere in § 523(a)(15) is it provided that a marital debt cannot be 'incurred' [in the course of a divorce or separation] for purposes of the statute simply because the underlying debt is owed to a third party."). *See also Fast*, 766 N.W.2d 47.

**37.** *See In re Schweitzer*, 370 B.R. at 150–54; *Fast*, 766 N.W.2d 47.

**38.** *See In re Johnson*, Bankruptcy No. 07–50187, Adversary No. 07–5054, 2007 WL 3129951 at *4 (Bankr.N.D.Ohio October 23, 2007) ("Courts are divided on the issue of whether debts owing to third parties and not subject to indemnification or hold harmless language fall within the ambit of § 523(a)(15)."); *In re Wodark*, 425 B.R. at 838 ("Nothing in § 532(a)(15) addresses the presence or absence of indemnification provisions."). *See also id.* at 837 (noting that prior to BAPCPA amendments, "courts were divided on the matter of whether debts delegated to divorcing/separating spouses in separation

still recognized that even in the absence of an indemnification or hold harmless provision, the debtor spouse's divorce-related obligation to make payments on third party debt is not dischargeable.[39]

While the issue of whether the absence of a hold harmless provision would preclude an exception to discharge for a divorce-related obligation to make payments on a non-support debt to a third party has apparently not been squarely addressed by the Sixth Circuit Court of Appeals since the 2005 BAPCPA amendments, pre-BAPCPA Sixth Circuit precedent rejected the view that absence of a hold harmless provision would necessarily result in the dischargeability of a divorce-related obligation to pay a debt to a third party.[40] Rather, the Sixth Circuit held that the bankruptcy court must look to applicable non-bankruptcy law (*i.e.*, state law governing enforceability of obligations to pay such debt under a divorce decree).[41] And we are aware of no authority that would prevent a Kentucky state court from enforcing with contempt sanctions such an obligation to pay a third-party debt under a divorce decree in the absence of an indemnification or hold harmless clause. In fact, a trial court's power to enforce provisions of a divorce decree through its contempt powers is clearly established under Kentucky law.[42]

In view of the broad definition of debt under federal bankruptcy law and a Kentucky trial court's authority to use its contempt powers to enforce obligations under divorce decrees, we conclude that Shane's obligation to Sondra under the divorce decree for him to make payments on the bank loan debt on the repossessed Durango was not discharged in Chapter 7 bankruptcy.' While perhaps the trial court's ordering Shane to make payments *to the bank* may be problematic because any direct obligation he owed *to the bank* was apparently discharged in bankruptcy and the bank was not a party to these proceedings, the trial court clearly retained the authority to enforce Shane's obligations to Sondra under the divorce decree. And, in any case, given the fact that the contempt finding was not accompanied by a fine or jail time sanction, his injury in being found in contempt appears negligible.

## C. No Abuse of Discretion in Attorney's Fees Award.

Acknowledging that trial courts have discretion to award attorney's fees

---

agreements or divorce decrees without express hold harmless or indemnification provisions were excepted from discharge under § 523(a)(15).").

**39.** *See In re Johnson,* 2007 WL 3129951 at *6; *In re Wodark,* 425 B.R. at 839–40.

**40.** *See In re Gibson,* 219 B.R. 195, 203 (B.A.P. 6th Cir.1998) ("the determination of whether a debtor incurs a debt in connection with a Separation Agreement or Dissolution Decree is not limited to the use of hold harmless or other specific indemnification language. A debtor may, and frequently does, incur such an obligation in accordance with applicable nonbankruptcy law.").

**41.** *See id.* (rejecting categorical view that "debts owing to third parties and debts not subject to indemnification or hold harmless language do not satisfy the qualifying language of § 523(a)(15)" and instead holding that "an analysis which determines the effect of applicable nonbankruptcy law is required in determining whether a debt has been incurred which satisfies the qualifying language of § 523(a)(15) ... and declines to adopt an analysis that fails to determine the effect of applicable nonbankruptcy law....") (citations omitted).

**42.** *See Crowder v. Rearden,* 296 S.W.3d 445 (Ky.App.2009) (upholding contempt finding and accompanying jail time sanction because of divorce litigant's repeated refusal to comply with court orders to make mortgage payments on marital residence, maintain residence, and cooperate with attempts to sell marital residence).

under KRS 403.220, Shane argues that the trial court abused this discretion in ordering him to pay $500 of Sondra's attorney's fees because, in his view, he should have received favorable rulings on all issues and because, in his view, the trial court must have failed to consider the parties' financial resources. Specifically, he points to his actual income, to his living with his mother "because he could not afford to live alone" and to his paying almost half of his gross monthly income in child support. While KRS 403.220 recognizes that the trial court may order one party to pay the other's attorney's fees "after considering the financial resources of both parties[,]" the Court of Appeals has previously held that the trial court is not required to mention the parties' financial resources or make specific findings on their financial resources when ordering one party to pay the other's attorney's fees. In short, the trial court must simply consider the parties' finances before rendering its decision on attorney's fees.[43]

The trial court heard evidence about both parties' financial resources because both parties testified in some detail about their income and expenses. The evidence does not compel a finding that Sondra's financial condition was so much better than Shane's that he could not reasonably be ordered to contribute $500 toward Sondra's attorney's fees. Nor do we agree that he was entitled to a favorable outcome on all issues. We agree with the Court of Appeals that the trial court did not abuse its discretion in ordering Shane to pay $500 of Sondra's attorney's fees.

**IV. CONCLUSION.**

For the foregoing reasons, we affirm the decision of the Court of Appeals.

All sitting. ABRAMSON, SCHRODER, and VENTERS, JJ., concur. SCOTT, J., concurs, in part, and dissents, in part, by separate opinion in which CUNNINGHAM and NOBLE, JJ., join.

SCOTT, J., concurring, in part, and dissenting, in part:

While I concur with the majority on the other issues, I must dissent as to this Court's approval of the Laurel Family Court's "automatic continuation" of a contested finding of "voluntary underemployment" without addressing Appellant's evidence concerning his two-year effort at economic betterment.[44] I dissent because such approval leaves this important area of family law without appropriate guidance or restraints, which is especially important now given the majority's implicit holding that direct or indirect child support avoidance is no longer a predicate to a finding of voluntary underemployment.

Appellant, Roy Howard, and Appellee, Sondra Howard (now Stewart), were married in Laurel County on September 11, 2004; had a child, Zachary, on March 2, 2005; separated on August 18, 2005; and were divorced on August 11, 2006. Roy has resided with his mother in Fayette County, Kentucky, since their separation in August 2005. Sondra remains in the

---

**43.** *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 148 (Ky.App.1990).

**44.** During the divorce, Appellant (then-Respondent) contended that he and Appellee (Petitioner in the dissolution action) had agreed that since both worked as prison guards at the Whitley County, Kentucky, federal prison—and continuing to do so during

their divorce would be hard on them—that he would leave his job there. Appellee, however, disputed any agreement, asserting that she would have never made such an agreement as it would have reduced the child support to which she was entitled. Ultimately, the family court found Appellant quit voluntarily and was, thus, "voluntarily underemployed."

marital home near Corbin, in Laurel County, near the Whitley County prison where she and Roy used to work together.

Whatever the reason, Roy did quit his job at the Whitley County federal prison during the pendency of their divorce. And although he continued thereafter to remain employed—working forty hours a week—his earnings plummeted from approximately $47,000 per year in 2005 to approximately $17,000 in 2006. In the dissolution action, the Laurel Family Court found Roy to be "voluntarily underemployed" and set his child support based on his previous 2005 earnings as a prison guard. Still working every week, by 2007, Roy had obtained better employment, increasing his earnings to approximately $21,000 per year.

Thereafter, by motion and affidavit, dated November 19, 2007, Roy sought to modify his child support obligations based on his continuing effort to better his employment and earnings in the intervening two years between the separation and the motion, noting he had continued to work forty hours per week since leaving his job at the prison, and had even changed jobs to increase his hourly earnings from $9 to $11 per hour. Roy supplied documentation that his average monthly income had increased from approximately $1,436.58 per month in 2006 to over $1,700 per month in 2007, although Roy has only a high school education, with no additional educational or technical training.[45]

His affidavit attached to his motion also asserted that he had applied at FMC in Lexington as a correctional officer and as a community correctional officer with the Division of Community Corrections for the Lexington/Fayette Urban County Government but had been denied employment at both due to health problems, including serious back pain for which he had undergone surgery at Central Baptist Hospital. However, without analyzing the evidence in light of KRS 403.212(2)(d), the court denied the motion, finding, "[t]he Respondent has not presented any *new issues* since the court determined [initially that] he was voluntarily underemployed." (Emphasis added.) As a result, Roy's child support obligation of $789.25 per month constitutes 41 percent of his gross monthly income and almost 55 percent of his net monthly income. This, even though Sondra's income from her continued prison employment more than doubles his.

My dissent from the majority on this issue is not about the family court's initial finding of "underemployment"—it is about its failure to analyze Roy's subsequent effort at economic betterment and the consequent absence of *any guidance* to the bar and family courts as to how one can extract his- or herself from such a designation.[46]

Although we should—under the abuse of discretion standard—generally defer to a family court's initial finding that a party is "voluntarily underemployed," I feel compelled to point out the unfairness in expecting a pending divorcee to maintain employment at the *same location* as the spouse—or the ex-spouse-to-be. If he makes a decision to leave, he risks—especially in this economy—being characterized as "underemployed"; but, if he stays, his emotional turmoil and the consequen-

---

45. KRS 403.212(2)(d) requires that a finding of potential income for one "voluntarily underemployed," "shall be determined based upon employment potential and probable earnings level based on the obligor's ... recent work history, occupational qualifica-

tions, and prevailing job opportunities and earnings levels in the community."

46. The majority's decision confirms that such designations are now "unhinged" from any direct or indirect child support avoidance.

tial danger of confrontation increases. Thus, I pause to remind family courts of the tenuous balance they must strike in these circumstances when a noncustodial parent's employment changes, thereby reducing his or her income. *See Rohloff v. Rohloff*, 161 Mich.App. 766, 411 N.W.2d 484 (1987) ("On the one hand, the courts must not unduly interfere with the personal lives and career choices of individuals merely because they have been involved in a divorce. On the other hand, because there has been a divorce, the courts are thrust into the middle of the parties' personal lives in order to protect the interests of the minor children who are also unwilling participants in the divorce.").

Simply put, I disagree with the majority's contention that the threshold standard for modification was not reached here; and, thus, the family court was not required to consider anew whether Howard *remained* voluntarily underemployed. Based on the majority's holding, I fear once a person is found to be "voluntarily underemployed," he or she will remain so, unless and until, he or she returns to the income level previously enjoyed.[47] And that plainly is not the standard envisioned by KRS 403.212(2)(d).

Although KRS 403.212(2)(d) has been amended to allow a court to deem a parent underemployed without an explicit finding that the parent intended to avoid or reduce his or her child support obligation, the Kentucky Legislature did not aim for voluntariness to equate to Dante's conception of purgatory. Given our concept of due process, it couldn't.[48] In recognition of such restrictions and the interrelated, explicit wording of KRS 403.212(2)(d) and 403.211(2), I would hold that substantive evidence sufficient to support a *continued* finding of direct or indirect child support avoidance must exist. Specifically, KRS 403.211(2) reads:

At the time of initial establishment of a child support order, whether temporary or permanent, or in any proceeding to modify a support order, the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support. *Courts may deviate from the guidelines where their application would be unjust or inappropriate. Any deviation shall be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation.*

(Emphasis added.)

Accordingly, upon the filing of an appropriate motion and affidavit, a family court must consider anew whether a person *remains voluntarily underemployed.* I believe evidence sufficient to compel such a renewed analysis exists here.[49]

In this case, the family court's willful ignoring of Roy's facts amid its assertion that there were no *new issues presented* constituted an arbitrary finding of continued voluntary underemployment. As a result, the family court abused its discretion. *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky.

---

**47.** Specifically, under this decision, I cannot help but wonder what evidence of continued employment history would constitute a sufficient evidentiary showing of a change in circumstances. Just what, exactly, must a person *do to show that he or she is no longer* underemployed? And with this new economy, how does he do it?

**48.** Even Section 2 of the Kentucky Constitution acknowledges that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

**49.** In so holding, I acknowledge it is the trial court's prerogative to make appropriate findings from such evidence. Our review is under an abuse of discretion standard only.

2010) ("[T]his Court reviews child support matters under an abuse of discretion standard, *i.e.*, whether the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. . . .").

Moreover, in my opinion, *Goldsmith v. Bennett–Goldsmith*, 227 S.W.3d 459 (Ky. App.2007), does not justify the family court's approach here, as the failure to produce sufficient evidence cannot be analogized to a court's ignoring sufficient evidence as was actually before it. In *Goldsmith*, the Court of Appeals affirmed the family court's denial of modification because the obligor offered *no explanation* regarding how he had divested himself of rental properties, which had provided his income in previous years. *Id.* at 462. Conversely, here, the family court *refused to consider* substantial facts that it may otherwise have found to be a change, *i.e.*, Howard's evidence showing he had always maintained employment, earning escalating salaries by switching jobs when available that arguably conformed to his educational and occupational qualifications once he left the prison, Sondra, and Laurel County.

Therefore, because the majority has issued a blanket approval of the family court's assertion here that "no new issues were presented," I must dissent on this issue.

CUNNINGHAM and NOBLE, JJ., join.