MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2016 ME 51
Docket:        Sag-15-54
Argued:        February 9, 2016
Decided:       April 12, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

SUZAN M. COLLINS

v.

RICHARD W. COLLINS

HJELM, J.

[¶1]  This case calls for us to consider the extent to which a discharge in bankruptcy relieves one former spouse from making payments ordered in a divorce judgment toward debts owed to the other former spouse and toward joint debts owed to a third party.

[¶2]  Richard W. Collins appeals from a judgment of the District Court (West Bath, *Dobson, J.*) concluding that he failed to show cause why he should not be found in contempt for failing to make payments on certain debts pursuant to a divorce judgment.  Richard contends that because he was granted a discharge in bankruptcy after the divorce judgment was issued, the court erred by ordering him to pay debts to his former spouse, Suzan M. Collins, and to a third party in accordance with the divorce judgment.  The Bankruptcy Code, however, explicitly

2

excludes from discharge one spouse's debt to the other spouse when that debt was incurred in the course of a divorce proceeding. Additionally, we conclude that pursuant to the Code, a discharge in bankruptcy does not relieve a spouse from a requirement created by a divorce judgment to make payments to a third party on a debt owed jointly by both spouses. Accordingly, we affirm.

## I. BACKGROUND

[¶3] The facts are not in dispute. In July 2008, the parties were divorced through a judgment (*Kidman, M.*) that, among other things, required Richard to pay to a credit union several joint business debts as well as personal debts that arose from the purchase of a truck and camper. The judgment required Richard to hold Suzan harmless on those debts. Just over a year later, in August 2009, the court (*Tucker, J.*) issued an amended judgment that contained an order of enforcement. By then, the truck and camper had been repossessed, and Suzan had made some payments toward a deficiency even though the judgment made Richard responsible for the debt. The August 2009 order required Richard to reimburse Suzan for fifty percent of the payments she made to the credit union on the personal loan or to pay that amount directly to the credit union. Additionally, the court ordered Richard to pay a different personal loan associated with personal property awarded to him in the original judgment, and, as was already provided in the original judgment, to pay the credit union on the business loan. The court also

awarded Suzan costs of $353.44. Neither party appealed from the order, and in February 2010 Suzan obtained a writ of execution against Richard in the principal amount of $7,038.32, reflecting the amount that Richard owed her based on the August 2009 order.

[¶4] On motions filed by Suzan, the court issued contempt orders against Richard in October 2010 and in May 2011. Suzan filed another contempt motion in January 2013 but was unable to serve Richard until January 2014, when he appeared in court for a different motion. After holding a hearing on the contempt motion, the court (*Mulhern, J.*) held Richard in contempt for failing to comply with the payment obligations created by the August 2009 order. The court found that Richard owed child support of $4,851.32 with ongoing amounts coming due; that he owed the credit union $3,619.87, plus interest, on the business loan; that he owed the credit union $10,000 for his half of the personal loan on the truck and camper; and that he owed Suzan a balance of $4,689.70, plus statutory interest, on Suzan's writ of execution and $353.44 for costs that she incurred in bringing the motion for contempt. The court set a schedule for Richard to pay these amounts and imposed a remedial sanction of a sixty-day jail sentence, which was stayed conditioned on Richard making timely payments. *See* M.R. Civ. P. 66(d), 120(a). The court ordered that if Richard did not make payments as required, Suzan could

4

request the court to schedule a hearing, where Richard would be required to show cause why he should not be incarcerated. No appeals were taken from this order.

[¶5] Two months after the court issued that contempt order, Richard filed a petition for Chapter 7 bankruptcy, and on October 15, 2014, the U.S. Bankruptcy Court issued a discharge in bankruptcy. *See* 11 U.S.C.S. § 727 (LEXIS through Pub. L. No. 114-119).

[¶6] On October 17, 2014, Suzan filed a request for a show cause hearing, asserting that Richard had not made payments as required by the May 2014 contempt order. In response, Richard filed a motion to dismiss her request for the show cause hearing, asserting that aside from his child support debt, all of his financial obligations had been discharged in the bankruptcy action.[1] In November 2014, the court held a show cause hearing in order to determine the effect of the bankruptcy discharge on his divorce-related obligations and whether Richard should be held in contempt for his failure to make those payments.

---

[1] Richard acknowledges that his child support obligation was not discharged in the bankruptcy action. Pursuant to 11 U.S.C.S. § 523(a)(5) (LEXIS through Pub. L. No. 114-119), "domestic support obligation[s]" are not subject to a bankruptcy discharge. The Bankruptcy Code defines the term "domestic support obligation" in part as a debt "owed to . . . a spouse, former spouse, or child of the debtor . . . in the nature of alimony, maintenance, or support," 11 U.S.C.S. § 101(14A) (LEXIS through Pub. L. No. 114-119), which includes child support, *see In re Diaz*, 647 F.3d 1073, 1089-1090 (11th Cir. 2011).

[¶7]   The court (*Dobson, J.*) issued an order denying Richard's motion to dismiss the show cause hearing and confirming Richard's payment obligations as ordered in the May 2014 contempt order.  Specifically, the court concluded that

> none of Richard's divorce judgment-connected financial obligations to Suzan were discharged in his bankruptcy proceeding.  His obligations directly to the third party creditors were discharged, but they may attempt to collect their obligations from Suzan.  He has a responsibility to Suzan to pay the debts and indemnify her from any collections efforts that [were] not discharged.  He therefore failed to "show cause" why he should not be found in contempt for not making payments on the [credit union] loans as well as on the debt to Suzan reflected in the writ of execution.

The court declined to issue an order of incarceration but, in light of its confirmation of his obligation to make payments as previously ordered, required Richard to begin paying the debts on February 1, 2015, subject to the same sanction for noncompliance that was established in the May 2014 contempt order. Richard appealed.

## II.  DISCUSSION

[¶8]   Richard argues that the discharge granted by the Bankruptcy Court preempts the state court from ordering him to make the payments enumerated in the post-judgment order.  Richard alternatively contends that with the exception of his child support obligation, the discharge in bankruptcy either entitles him to a full discharge of all court-ordered debts arising from the divorce judgment, or that the discharge exposes him to liability only to the extent that Suzan makes payments on

6

the joint debts to the credit union. In a divorce action, we review a post-judgment order for an abuse of discretion or error of law. *Brasier v. Preble*, 2013 ME 109, ¶ 12, 82 A.3d 841.

[¶9] As a preliminary matter, Richard's preemption argument is not persuasive, because state courts retain concurrent jurisdiction to determine the dischargeability of certain debts. *See, e.g.*, *In re Walker*, 427 B.R. 471, 478 n.16 (B.A.P. 8th Cir. 2010) (recognizing that except as to certain types of debts that are not relevant here, "state courts have concurrent jurisdiction to decide dischargeability, which is most often raised as a defense to a state court lawsuit brought after the discharge has been entered"); *cf.* 28 U.S.C.S. § 1334(b) (LEXIS through Pub. L. No. 114-119) (providing in pertinent part that the "[federal] district courts shall have original but not exclusive jurisdiction of all civil proceedings . . . arising in or related to cases under [the Federal Bankruptcy Code]."). Here, the court merely examined the enforceability of Richard's payment obligations ordered in the divorce proceedings, in light of the bankruptcy discharge. The court acted well within its authority by addressing the question of whether Richard's court-ordered obligations survived the discharge issued by the Bankruptcy Court.

[¶10] We next examine the effect of the discharge both on debts that Richard owes directly to Suzan, and on debts that the divorce judgment requires

him to pay to the credit union as part of his obligation to Suzan.  The analysis for both issues is governed by the provisions of 11 U.S.C.S. § 727(a), which authorizes the Bankruptcy Court to grant a discharge of debt to the debtor, and 11 U.S.C.S. 523(a) (LEXIS through Pub. L. No. 114-119), which provides in pertinent part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt[2]--
> . . .
>
> (5) for a domestic support obligation; [or]
> . . .
>
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, [or] divorce decree . . . .

A.    Debts Owed to Suzan

[¶11]  The amended divorce judgment issued in August 2009 required that Richard pay money directly to Suzan as part of the adjudication of property issues in the course of the divorce proceeding.  Richard's obligation was subsequently reduced to a writ of execution in the amount of $4,869.70.  This debt falls squarely within the exception to discharge created by section 523(a)(15) because it is a debt

---

[2]  The Bankruptcy Code defines the term "debt" as a "liability on a claim."  11 U.S.C.S. § 101(12). The term "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable . . . or . . . right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." *Id.* § 101(5).

to a former spouse that was incurred in the course of a divorce proceeding, *see* 11 U.S.C.S. § 523(a)(15), and it was therefore not extinguished by the discharge.

[¶12] Additionally, before Richard obtained the bankruptcy discharge, the court ordered him to pay $353.44 to Suzan for the costs she incurred in bringing her contempt motion. This payment obligation is also a debt described in section 523(a)(15) and therefore was not discharged. *See In re Prensky*, 416 B.R. 406, 411-12 (Bankr. D. N.J. 2009) (holding that a debt for attorney fees incurred by an ex-spouse in a post-judgment divorce contempt proceeding was nondischargeable).

B. Debts Payable Directly to Creditors

[¶13] Having determined that Richard's direct obligations to Suzan were nondischargeable pursuant to section 523(a)(15), we next consider whether the same statutory provision also forecloses the discharge of joint debts that, pursuant to orders issued in the divorce proceeding, Richard was ordered to pay directly to one of the parties' creditors—an issue we have not previously addressed.

[¶14] The debts owed to the credit union, which the court ordered Richard to pay, are debts on which Richard and Suzan are jointly liable. When the divorce court required Richard to make payments directly to the credit union, the court, in effect, established a parallel obligation due from Richard to Suzan, because his payments to the credit union would reduce and ultimately extinguish *her* liability

to that creditor. For that reason, in these circumstances there are "two distinct obligations." *Howard v. Howard*, 336 S.W.3d 433, 445 (Ky. 2011) (quotation marks omitted). One debt, which arises from the original transaction, is owed to the creditor itself. The second debt is created by the divorce judgment and is owed to the other spouse. *Id.* The existence of the latter obligation is particularly evident where, as here, the non-payor spouse is the beneficiary of a "hold harmless" provision contained in the divorce decree. *See In re Schweitzer*, 370 B.R. 145, 152 (Bankr. S.D. Ohio 2007). This arrangement creates a direct duty that runs from the payor spouse to the non-payor spouse because, as between the parties to the divorce, she would become entitled to indemnification if she were to be held liable on the joint debt. Because section 523(a)(15) precludes the discharge of debt from one spouse to the other that was incurred in the divorce proceeding, the payor spouse's underlying debt to the creditor necessarily survives a bankruptcy discharge when—as here—payment toward that debt satisfies the payor spouse's obligation to the other spouse under a divorce judgment.

[¶15]  The "weight of authority," *Howard*, 336 S.W.3d at 446, supports the conclusions that the provision of a divorce judgment requiring one spouse to pay a joint debt directly to a creditor creates a debt to the other spouse and that, under section 523(a)(15), the debt created when a divorce judgment obligates one spouse to pay a third-party creditor for the benefit of the other spouse is also not subject to

discharge. *See, e.g., id.* at 444; *In re Wodark*, 425 B.R. 834, 837-38 (B.A.P. 10th Cir. 2010) ("What matters in a § 523(a)(15) case is (1) the nature of the debt[] and (2) whether the debt was incurred in the course of a divorce or separation. The fact that the underlying obligation was payable to [a third party] does not mean that [the debtor] did not incur a separate obligation to [the spouse] that is, in itself, a nondischargeable debt."); *In re Williams*, 398 B.R. 464, 469 (Bankr. N.D. Ohio 2008) ("Nowhere in § 523(a)(15) is it provided that a marital debt [to a former spouse] cannot be 'incurred' for purposes of the statute simply because the underlying debt is owed to a third party.").

[¶16] Richard argues that in light of the bankruptcy discharge, he can be held liable only to Suzan—but only after and to the extent that Suzan has made payments on the underlying joint debt. This narrow view of his exposure, however, runs contrary to persuasive authority establishing that as the payor spouse under the divorce judgment, he remains responsible for making payments directly to the creditor under that judgment notwithstanding the bankruptcy discharge.

[¶17] Further, Richard's argument is belied by the beneficial purpose underlying section 523(a)(15). Although most of the statutory exceptions to a bankruptcy discharge are construed strictly, Congress took a different view toward a bankrupt's obligations to pay child and spousal support, and to pay debts arising

from a divorce. *See In re Crosswhite*, 148 F.3d 879, 881-82 (7th Cir. 1998). Accordingly, in 1994 Congress amended the Bankruptcy Code to protect former spouses by providing that those divorce-related obligations were not dischargeable absent specified circumstances. *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 304(e), 108 Stat. 4106, 4133 (1994). Then, in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress provided even *greater* protection to former spouses by eliminating altogether the conditions that formerly allowed those types of obligations to be discharged. *See* 11 U.S.C.S. 523(a)(15); *Williams*, 398 B.R. at 468 (construing the 2005 legislation and stating that "any debt falling within the scope of § 523(a)(15) [is] absolutely nondischargeable"). This evolution of section 523(a)(15) demonstrates a greater level of protection to a former spouse in Suzan's situation than Richard recognizes, and it undermines his contention that before he can become liable on the credit union debts, Suzan herself must make payments for which Richard was ordered responsible—and only then try to obtain satisfaction from him.

12

[¶18]  Because as part of the divorce judgment Richard became responsible for paying the credit union debt on which Suzan is jointly liable, Richard's liability on those debts was not discharged in bankruptcy.[3]

## III. CONCLUSION

[¶19]  The divorce judgment required Richard to make certain payments directly to Suzan, and other payments to a third-party creditor, holding Suzan harmless on those third-party debts.  Those obligations were statutorily insulated from a post-judgment bankruptcy discharge, and Richard remains liable to Suzan and for payments to the credit union on the joint debts.  The court therefore did not err by enforcing the contempt order that predated the discharge.

The entry is:

Judgment affirmed.

**On the briefs and at oral argument:**

Thaddeus V. Day, Esq., Law Offices of Thaddeus V. Day, P.L.L.C., Cumberland Center, for appellant Richard W. Collins

Matthew C. Garascia, Esq., Auburn, for appellee Suzan M. Collins

West Bath District Court docket number FM-2008-89
FOR CLERK REFERENCE ONLY

---

[3]  In light of the narrow issue presented to us in this case, we consider only Richard's liability to the credit union under the divorce judgment.  We need not and do not determine here whether the credit union could directly enforce the debt against Richard.