THOMPSON, Presiding Judge.
Timothy Andrews ("the husband") and Wanda Andrews ("the wife) were divorced by an October 2, 2013, judgment of the Houston Circuit Court ("the trial court") that incorporated a settlement agreement reached by the parties. The October 2, 2013, divorce judgment provided, in relevant part:
"(5) ALIMONY: The husband shall pay to the wife the sum of $500 each month, for a period of eight (8) years, as alimony in gross. That said alimony shall begin on the first day of the month immediately following the signing of this agreement.
"(6) MISCELLANEOUS: That the husband shall maintain his current life insurance policy with Alfa Insurance with the wife named as the irrevocable beneficiary for a period of eight (8) years."
On June 16, 2016, the wife filed a petition for a rule nisi in the trial court, alleging that the husband had failed to pay alimony as required by the divorce judgment and had failed to maintain the life-insurance policy. The wife sought to have the husband held in contempt for his alleged failure to comply with the above-referenced provisions of the divorce judgment and sought a judgment for the amount of the accumulated arrearage and an award of an attorney fee.
The husband answered and denied liability, and he sought to dismiss the wife's petition. The husband later counterclaimed seeking to reduce or eliminate his alimony obligation, which he characterized as one for periodic alimony. Before the trial court, the husband argued, among other things, that his alimony obligation had terminated because the wife had remarried; he cited as support for his position § 30-2-55, Ala. Code 1975 ("Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried ...."). The wife maintained that the husband's alimony obligation had not terminated upon her remarriage because, she said, the obligation was one for alimony in gross, or a property settlement, as opposed to periodic alimony. See Lacey v. Lacey, 126 So.3d 1029, 1035 (Ala. Civ. App. 2013) ("An award of alimony in gross is in the nature of a property division, and such an award is not subject to modification.").
The trial court conducted an ore tenus hearing. On November 29, 2016, the trial court entered a judgment concluding that the alimony award and the provision requiring the husband to maintain the life-insurance policy were awards of alimony in gross that were not subject to modification. The trial court found the husband in contempt of the 2013 divorce judgment and ordered that he purge himself of contempt by paying the wife $9,000 as an arrearage in alimony in gross within 90 days. The trial court also denied the husband's counterclaim. The husband filed a postjudgment motion, which the trial court *245 denied. The husband filed a timely notice of appeal.
After reviewing the record on submission, this court discovered that the husband had stated during his testimony at the ore tenus hearing that he had filed a bankruptcy action in 2015 and that, if the trial court did not eliminate the alimony obligation, he intended to amend that bankruptcy action to include that obligation. This court issued an order on August 30, 2017, requiring the parties to submit letter briefs regarding the status of that bankruptcy action and whether, if it had been amended, the bankruptcy court had issued a stay that would prohibit this court's consideration of the issues raised in this appeal; in that order, this court cited 11 U.S.C. § 362(a), and Hill v. Hill, 730 So.2d 248, 251 (Ala. Civ. App. 1999).
In response to this court's order, the husband submitted a letter brief in which he represented that he had been discharged from bankruptcy in August 2015 and that he had reopened the bankruptcy case following the entry of the trial court's November 29, 2016, judgment to amend his bankruptcy petition and the relevant schedules to include his alimony-in-gross obligation; the husband argued that his reopening the bankruptcy proceeding triggered the automatic-stay provisions of 11 U.S.C. § 362(a). In his filing before this court, the husband asserted that the wife had not objected to the amendment to his bankruptcy petition and that, "[c]learly, the bankruptcy was automatically closed on July 10, 2017[,] without making a determination of the dischargeability of the identified debts to the [w]ife ...." In support of those assertions, the husband attached to his letter brief only a "case summary" of the bankruptcy action, which indicates that the wife was listed as a creditor in the bankruptcy action, that the husband was discharged from Chapter 7 bankruptcy on August 3, 2015, that his bankruptcy case was reopened on January 6, 2017, and that the bankruptcy action was "terminated" on July 10, 2017.
On September 7, 2017, this court issued a second order requiring the parties to submit letter briefs regarding the validity of the husband's notice of appeal, citing Hewett v. Wells Fargo Bank, N.A., 197 So.3d 1105, 1106 (Fla. Dist. Ct. App. 2016) ("[T]he filing of a notice of appeal during the pendency of a bankruptcy stay should be deemed void as a violation of the automatic stay."); In re Capgro Leasing Associates, 169 B.R. 305, 310 (Bankr. E.D.N.Y. 1994) ("Eight of the twelve circuit courts of appeals have held that the automatic stay prevents a debtor from appealing the decision of a non-bankruptcy forum, where that action was originally commenced against the debtor."); and Autoskill Inc. v. National Educational Support Systems, Inc., 994 F.2d 1476, 1486 (10th Cir. 1993) (" 'Rule 6009, [Fed. R. Bankr. P.,] along with [ 11 U.S.C. §] 362 itself, make it clear that the automatic stay does not apply to the continued prosecution of actions by the trustee or debtor in possession. Those entities may continue or pursue litigation without leave of court (or release of stay under section 362 ).' " (quoting 8 Collier on Bankruptcy ¶ 6009.03 & n. 7, at 6009-3 (15th ed. 1992))), overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495 (10th Cir. 2011).
The wife complied with this court's September 7, 2017, order and submitted a letter brief in which she asserted that, based on Autoskill, 994 F.2d at 1486, the husband's notice of appeal was valid and that we should affirm the trial court's judgment. After seeking an extension, which we granted, the husband also complied with this court's second order requesting letter briefs regarding the husband's bankruptcy filing. Although not *246 abundantly clear from the husband's second letter brief, it appears that the husband also believes his notice of appeal was valid based on the reasoning set forth in Autoskill, 994 F.2d at 1486. The husband concluded his second letter brief with one sentence asserting, for the first time and without citations to any supporting authority, that the trial court's judgment was void because, he says, the wife's "claims would have been covered in the bankruptcy and no stay was requested nor was any amended claim filed post petition when the bankruptcy was reopened."
As an initial matter, we first address whether the husband violated an automatic stay of the bankruptcy court when he filed his notice of appeal of the November 29, 2016, judgment in this court. 11 U.S.C. § 362 provides, in relevant part:
"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of-
"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."
The bankruptcy code also provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). However, once a debtor has been discharged, the automatic-stay provisions of 11 U.S.C. § 362 are not triggered by the simple reopening of a bankruptcy case. See, e.g., Wisler v. White (In re White), 383 B.R. 366, 368 (Bankr. W.D. Pa. 2008) ; Burke v. United States (In re Burke), 198 B.R. 412, 416 (Bankr. S.D. Ga. 1996) ("Under 11 U.S.C. § 362(c)(2)(C), the automatic stay expired upon the Debtor's discharge." (footnote omitted)); and In re Gruetzmacher, 145 B.R. 270, 274 (Bankr. W.D. Wis. 1991) ("The Court therefore holds that the reopening of the debtor's bankruptcy case ... did not reinstate the automatic stay provisions of 11 U.S.C. § 362.") This appeal is therefore distinguishable from Hewett, 197 So.3d 1105 ; In re Capgro Leasing Associates, 169 B.R. 305 ; Autoskill, 994 F.2d 1476, and other cases in which courts have considered the validity of a notice of appeal filed during the pendency of a bankruptcy petition, i.e., before the debtor's discharge. See also Johnson v. Cramer, 598 So.2d 980, 981 (Ala. Civ. App. 1992) (holding that the reopening of a closed bankruptcy action did not provide for an automatic stay). Given the foregoing authority, we conclude that the husband's notice of appeal, filed after he sought to reopen his former, closed bankruptcy action, was not rendered void by the automatic stay provisions of 11 U.S.C. § 362.
As indicated, in a one-sentence statement in his second letter brief, the husband asserts, without elaboration or citation to authority, that the trial court's judgment was void, purportedly because, he says, the alimony obligation was addressed in the bankruptcy action.[1] The *247 parties presented evidence to the trial court regarding the husband's bankruptcy filing and how it had impacted the division of their property, such as their marital home and a boat. The husband testified that he had not included the alimony obligation specified in the divorce judgment as a part of his 2015 bankruptcy action. The husband did not present any evidence to this court, in response to our requests for letter briefs, concerning whether the alimony obligation was addressed in the original bankruptcy action or in the reopened action.
The bankruptcy code provides that a bankruptcy action "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged...." 11 U.S.C. § 524(a)(1). The husband's own evidence indicates that the 2015 bankruptcy action did not determine the extent of his liability for alimony under the divorce judgment, and, therefore, the November 29, 2016, judgment enforcing the divorce judgment cannot be said to be void under 11 U.S.C. § 524. Further, during the hearing on the merits, the husband indicated that he intended either to amend the bankruptcy filing or to seek bankruptcy protection in another filing if the trial court determined that the alimony provision of the divorce judgment was one providing for alimony in gross. The husband raised no argument concerning the bankruptcy in his appellate brief filed in this court. In a letter brief filed at the request of this court, the husband made only a cursory statement that the wife's alimony claim "would have been covered in bankruptcy," a statement contradicted by his own testimony. That statement is also contradicted by the statement in the husband's first letter brief to this court indicating that the amended bankruptcy action, when closed on July 10, 2017, had not made a determination regarding the alimony-in-gross obligation. Accordingly, we decline to hold that the November 29, 2016, judgment was void because of the husband's bankruptcy action.
With regard to the merits, the husband argues that the trial court erred in concluding that the provision at issue in the divorce judgment was one providing an award to the wife of alimony in gross, rather than periodic alimony.
"With regard to the characteristics of periodic alimony and alimony in gross, this court has stated:
" 'Our supreme court has explained the difference between periodic alimony and alimony in gross. Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974). Alimony in gross is considered "compensation for the [recipient spouse's] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable." [Hager v. Hager], 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award "must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested." Cheek v. Cheek, 500 So.2d 17, 18 (Ala. Civ. App. 1986). It must also be payable out of the present estate of the paying spouse as it exists at the time of the divorce. [Hager v. Hager], 293 Ala. at 55, 299 So.2d at 750. In other words, alimony in gross is a form of property settlement. [Hager v. Hager], 293 Ala. at 54, 299 So. 2d at 749. An alimony-in-gross award is generally not modifiable. Id.
" 'Periodic alimony, on the other hand, "is an allowance for the future support of the [recipient spouse] payable from the current earnings of the *248 [paying spouse]." [Hager v. Hager], 293 Ala. at 55, 299 So.2d at 750. Its purpose "is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage." O'Neal v. O'Neal, 678 So.2d 161, 164 (Ala. Civ. App. 1996) (emphasis added). Periodic alimony is modifiable based upon changes in the parties' financial conditions or needs, such as an increase in the need of the recipient spouse, a decrease in the income of the paying spouse, or an increase in the income of the recipient spouse. See Tibbetts v. Tibbetts, 762 So.2d 856, 858 (Ala. Civ. App. 1999). The paying spouse's duty to pay periodic alimony may be terminated by petition and proof that the recipient spouse has remarried or is cohabiting with a member of the opposite sex. Ala. Code 1975, § 30-2-55.'
" TenEyck v. TenEyck, 885 So.2d 146, 151-52 (Ala. Civ. App. 2003)."
Lacey v. Lacey, 126 So.3d at 1031.
The evidence pertaining to this issue is as follows. The wife testified that she understood the alimony award to be one for alimony in gross, and, she said, she believed that her right to enforce that obligation would not be affected by her remarriage. The wife testified that she was unaware whether the alimony had been listed as income on her tax returns and that she was unaware of the tax implications that arise depending on whether an alimony obligation is one for periodic alimony or alimony in gross. The wife stated that she hired an accountant to complete her income-tax returns and that she relied on his expertise to determine whether to include the alimony as income on her income-tax returns. The trial court noted that the manner in which the wife had treated the alimony on her tax returns could impact its determination, and it stated that it would allow the parties to submit their tax returns and a brief to the court after the close of the evidence. See, e.g., Rose v. Rose, 70 So.3d 429, 433 (Ala. Civ. App. 2011) ("Periodic alimony is also distinguishable from alimony in gross because it is treated as taxable income to the party receiving the award."). The wife submitted her tax returns after the hearing, and those documents indicate that the alimony was included as income in the determination of the wife's income.
The husband testified that he had believed that the obligation was one for periodic alimony and that he had deducted his payments of that obligation on his tax returns. Similarly, the husband stated that he did not list the alimony obligation in his 2015 bankruptcy action because, he believed, such an obligation was not dischargeable in bankruptcy.
On appeal, the husband argues that the evidence, particularly the evidence regarding how the parties treated the alimony on their respective income-tax returns, indicates that the trial court erred in determining that the alimony obligation established in the parties' divorce judgment was one for alimony in gross. Indeed, it appears that the wife did treat the alimony obligation, at least for tax purposes, as one involving an award of periodic alimony. The trial court noted during the hearing that the parties' treatment of the alimony on their income-tax returns could provide evidence of the nature of the award.[2]
*249 In its judgment, the trial court noted that our supreme court has held that "[w]hen the type of award or awards intended is not particularly specified, the source of payment and the purpose are of prime importance." Hager v. Hager, 293 Ala. 47, 55, 299 So.2d 743, 750 (1974) (emphasis added); see also TenEyck v. TenEyck, 885 So.2d 146, 152 (Ala. Civ. App. 2003) (" 'When the type of award is not specifically stated in the divorce [judgment], the source of payment and its purpose are important factors in determining whether an award is periodic alimony or alimony in gross.' " (quoting Cheek v. Cheek, 500 So.2d 17, 19 (Ala. Civ. App. 1986) )); and Lacey v. Lacey, supra (noting that the source of the payment and its purpose are important factors to resolve if there is no specification of the type of alimony award made in the judgment).
In this case, as the trial court found, the type of award was specified in the parties' divorce judgment, i.e., the divorce judgment specified that the alimony award was one for alimony in gross. See Bolling v. Bolling, 586 So.2d 225, 226 (Ala. Civ. App. 1991) ("The intent to award alimony in gross should be necessarily inferred from the language used or should be unequivocally expressed."). The trial court also found that the award satisfied the two-part test explained in Lacey v. Lacey, supra, because the time and amount of the payments are certain and the wife's right to receive the payments is vested because there is no specification that the payments could be modified. See, e.g., Hager v. Hager, 293 Ala. at 54, 299 So.2d at 750 ("[T]he term 'vested' simply signifies that an award of 'alimony in gross' is not subject to modification."). Given the language of the alimony award in the parties' October 2, 2013, divorce judgment, we cannot say that the husband has demonstrated that the trial court erred in determining that that award was one for alimony in gross and, therefore, that it was nonmodifiable and due to be enforced.
AFFIRMED.
Pittman, Moore, and Donaldson, JJ., concur.
Thomas, J., dissents, with writing.
Timothy Andrews ("the husband") has appealed a judgment of the Houston Circuit Court ("the trial court") finding him in contempt of a 2013 judgment that had divorced him from Wanda Andrews ("the wife") and had required him to pay alimony. The majority affirms the trial court's judgment. I respectfully dissent.
The issue raised by the husband on appeal is whether the trial court's 2013 judgment required him to pay periodic alimony, which would have terminated upon the wife's remarriage, or alimony in gross, which would not have been subject to modification and for which the husband would have been responsible notwithstanding the wife's remarriage. As the majority notes, however, the record indicates that the husband initiated a bankruptcy case in 2015, which raises additional questions that must be answered. As to the threshold determination regarding the validity of the husband's notice of appeal, I agree with the majority's resolution of that issue for the reasons discussed in the main opinion, which distinguish this case from the cases noted and this court's recent opinion in Alt v. Alt, [Ms. 2160363, November 17, 2017] --- So.3d ----, ---- (Ala. Civ. App. 2017).
*250 I believe, however, that the majority goes too far in deciding that the husband's alimony obligation was not discharged in bankruptcy, and I therefore dissent from the decision to affirm the trial court's judgment. First, in reaching its decision, the majority implicitly assumes that state courts have subject-matter jurisdiction to decide whether an alimony obligation has been discharged under federal bankruptcy law. Admittedly, other courts have reached that same determination. See, e.g., Lewis v. Lewis (In re Lewis ), 423 B.R. 742, 755 (Bankr. W.D. Mich. 2010) ("Under current law, state courts may decide nearly all divorce and domestic relations nondischargeability issues regardless of whether the obligation is for 'support' or for a 'property settlement.' "); Davidson v. Soelberg (In re Soelberg ), No. 15-01355, Oct. 7, 2016, 2016 WL 5874828, at n.6 (Bankr. D. Idaho 2016) (not published in the Bankruptcy Reporter)("[A]s the bankruptcy court explained in In re Lewis, 423 B.R. 742, 754-55 (Bankr. W.D. Mich. 2010), the exclusivity over [ 11 U.S.C.] § 523(a)(15) matters that existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act ('BAPCPA') was eliminated by the BAPCPA alterations to the language of [ 11 U.S.C.] § 523(c)(1), resulting in concurrent jurisdiction with state courts. In addition, even pre-BAPCPA, [ 11 U.S.C.] § 523(a)(5) adjudication-the matter most closely at issue here-was subject to concurrent jurisdiction."); Holland v. McCartney (In re Holland ), No. 12-11152, Nov. 26, 2012 (Bankr. S.D. Ga. 2015) (not published in the Bankruptcy Reporter); and In re Lemoine, No. 12-11152, 2012 WL 5906939 at *2 (Bankr. E.D. Pa. 2012) (not published in the Bankruptcy Reporter). I am reluctant to conclusively resolve that question in this case, however, because the parties have provided no legal argument on that issue, as is demonstrated by its omission from the majority's analysis.
Similarly, even assuming that state courts have such jurisdiction, I would not attempt to decide whether the husband's alimony obligation was discharged in bankruptcy based on the meager relevant evidence contained within this record, especially because important aspects of federal bankruptcy law have been amended as recently as 2005. See William Houston Brown, Bankruptcy and Domestic Relations Manual §§ 1:2 & 1:3 (West 2017)(explaining the legislative histories of 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15), which govern, among other things, the nondischargeability of debts like alimony). Indeed, the analysis set out in main opinion regarding this question does not approximate the discussion that is devoted to similar inquiries by other state courts. See, e.g., Trimble v. Trimble, 511 S.W.3d 392 (Ky. Ct. App. 2016) ; Collins v. Collins, 136 A.3d 708 (Me. 2016) ; and In re Mason, 164 N.H. 391, 58 A.3d 1153 (2012).
The majority appears to skirt thorough consideration of the question by noting the brief trial testimony regarding the husband's bankruptcy and an absence of additional evidence or argument on that point; in essence, the majority appears to conclude that the husband has waived any argument regarding discharge of his alimony obligation in bankruptcy. In response, I first note that, as is further explained by the authority cited above, application of current bankruptcy law would seem to favor the wife under the circumstances presented in this case and would not appear to offer the husband any obvious advantage regarding a determination of the nondischargeability of his alimony obligation. I therefore see no inherent unfairness to the wife in considering the husband's bankruptcy more completely. Second, and more importantly, I note that the fundamental problem we face here is an inability to actually determine whether *251 the husband's alimony obligation was discharged in bankruptcy because the record on appeal demonstrates that the parties did not actually litigate that issue in the trial court.
Thus, insofar as the majority bases its decision on an absence of relevant evidence and argument on that point, I agree with its assessment in that regard. I also agree that, under such circumstances, we should usually consider such arguments to have been waived. However, as the majority points out in the main opinion, if the husband's alimony obligation was discharged in bankruptcy, the trial court's judgment and, consequently, this court's judgment, could be void under 11 U.S.C. § 524(a)(1). I therefore disagree that we should risk issuing a potentially void judgment based on a determination that the trial court's judgment is valid, when the evidence and arguments necessary to make that determination are absent from the record and briefs on appeal.
The problems that may arise as a result of a state court's failure to fully account for the effects of a discharge obtained through bankruptcy are not purely hypothetical. In Egleston v. Egleston (In re Egleston ), 448 F.3d 803, 807 (5th Cir. 2006), a case in which the parties had been divorced, the United States Court of Appeals for the Fifth Circuit was left to consider whether two contempt judgments that had been entered by a state court in 1998 were void for violating 11 U.S.C. § 524(a)(1) as a result of a bankruptcy case that had been initiated by the husband in that case in 1994. In so doing, the Fifth Circuit noted that the litigation following the state court's contempt judgments had produced "many additional orders from the state court," including another finding of contempt that had resulted in that husband's imprisonment for five months in 1999. Id. at 807. In 2001, the parties began to litigate in the relevant bankruptcy court the question whether the state court judgments were void, and the bankruptcy court's determination was ultimately appealed to the Fifth Circuit, resulting in its decision in Egleston. Id. at 807.
"Meanwhile, on September 17, 2003, the state court issued an order that finally acknowledged the 1994 bankruptcy and its effect on the earlier state court judgments." Id. at 808. The Fifth Circuit further explained: "As the state court noted, the parties failed to make the original bankruptcy proceedings part of the state court record. We agree with the state court's comment that much of the frustration and aggravation could have been avoided had the parties done so." Id. at 808 n.7. The Fifth Circuit ultimately determined that one of the state court's 1998 contempt judgments was void in its entirety and that the other judgment was void in part. Id. at 810-15.
The Fifth Circuit's opinion in Egleston illustrates the concerns I have about this case. I do not believe that the limited information available to this court regarding the husband's bankruptcy case is sufficient to determine whether his alimony obligation was discharged in bankruptcy, whether the trial court's judgment is void, or, consequently, whether this court's judgment is void. Moreover, failing to take adequate notice of the husband's bankruptcy at this stage could result in ongoing litigation, judgments, and perhaps even imprisonment-all of which may be predicated on a void judgment.
In light of the complexities involved, I believe that the trial court should be afforded an opportunity to entertain the parties' arguments regarding whether it has subject-matter jurisdiction to determine the nondischargeability of the husband's alimony obligation and, if so, to consider *252 any evidence that may be relevant to that determination, which, as noted by the Fifth Circuit in Egleston, 448 F.3d at 808 n.7, would ideally include the proceedings from the husband's bankruptcy case. Having not undertaken those inquiries, the trial court lacked sufficient evidence upon which to base a threshold determination regarding its ability to effectuate the relief requested in the wife's rule nisi petition. In other words, it is unclear, based on this record, whether applicable bankruptcy law, including the injunctive principles set out in 11 U.S.C. § 524, should have operated to prevent the trial court from enforcing the husband's alimony obligation upon the wife's request that it do so.
I would therefore vacate the trial court's judgment and remand this cause for the trial court to determine (a) whether it has subject-matter jurisdiction to determine the nondischargeability of the husband's alimony obligation and, if so, (b) whether it can properly enforce that obligation under relevant bankruptcy law. See, e.g., Alabama Dep't of Envtl. Mgmt. v. Friends of Hurricane Creek, 71 So.3d 673, 677-78 (Ala. Civ. App. 2011). Moreover, should the parties decide that the bankruptcy court is better positioned to resolve this dispute than is the trial court, I would not purport to place any limitations on the bankruptcy court's ability to resolve any issue raised by this dispute, including the substantive questions addressed by the majority in the main opinion regarding the nature of the husband's alimony obligation. I would therefore not address those questions.
For the foregoing reasons, I dissent.

With regard to this assertion, the husband's second letter brief states, in its entirety:
"Based on the relevant caselaw and governing statutes and regulations, it would appear that the Rule Nisi petition filed by [the wife] was due to be dismissed as her claims would have been covered in the bankruptcy and no stay was requested nor was any amended claim filed post petition when the bankruptcy was reopened or in the alternative, the Order issued by the [trial court] should be declared null and void."

In his appellate brief, the husband references his own income-tax returns, which he attached to his appellate brief. The husband did not submit those income-tax returns to the trial court, and they are not contained in the record on appeal. This court may not consider attachments to an appellate brief that were not presented to the trial court. Roberts v. NASCO Equip. Co., 986 So.2d 379, 385 (Ala. 2007).